Texas Gas Transmission Corp., Appellee,

*v.*

Thomas D. Benson, Commissioner of Revenue of the State of Tennessee, Appellant.

Columbia Gulf Transmission Co., Appellee,

*v.*

Thomas D. Benson, Commissioner of Revenue of the State of Tennessee, Appellant.

Tenneco, Inc., Appellee,

*v.*

Thomas D. Benson, Commissioner of Revenue of the State of Tennessee, Appellant.

444 S.W.2d 137

(*Nashville*, December Term, 1968.)

Opinion filed July 18, 1969.

Opinion on Petition to Rehear filed August 27, 1969.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, Deputy Attorney General, and PAUL JENNINGS, Assistant Attorney General, Nashville, for appellant.

HARRIS A. GILBERT and JOHN D. WHALLEY, W. W. BERRY and T. G. PAPPAS, Nashville, for appellees; BARKSDALE, WHALLEY LEAVER, GILBERT & FRANK, BASS, BERRY & SIMS, Nashville, and JOHN BRENDEL, Houston, Tex., of counsel.

Mr. Justice Chattin delivered the opinion of the Court.

We will refer to the parties as complainants and defendant as they appeared in the trial court.

The suits were consolidated for trial. Complainants are foreign corporations engaged in the business of operating interstate natural gas pipelines which transverse this State. Defendant is the appointed and acting Commissioner of Revenue for Tennessee.

Complainants' pipelines extend from gas fields or delivery points in Louisiana and Texas to terminal points in the northern and eastern states of the country. Complainants are natural gas companies within the meaning of the Natural Gas Act of 1938 and are subject to the regulatory jurisdiction of the Federal Power Commission.

The pipeline systems consist of the mains and compressor stations. The compressor stations are spaced at equal distances along the mains. The mains are utilized to transport natural gas in continuous flow from the gathering points in Louisiana and Texas to delivery points along the lines outside the boundaries of this State.

The compressors maintain in the mains a sufficient pressure to propel the gas in sufficient volume to supply the demands of customers.

The compressors consist of either combustion or centrifugal engines. The fuel utilized to operate the engines is natural gas drawn from the mains. The gas is withdrawn from the mains which run through the stations, metered, then through pipes to pressure regulators to reduce the pressure and finally through pipes to the engines. The fuel gas is completely consumed in the engines except for carbon dioxide fumes which are exhausted into the atmosphere.

Previous to June 1, 1963, all natural gas was exempted from the sales or use tax. The 1963 legislature removed the exemption. Complainants failed to include in the measure of their use tax liability the value of the gas used in operating the compressors along their lines within this State.

Defendant conducted audits of complainants' records and billed complainants for use tax deficiencies for the period June 1, 1963, through December 31, 1966. Complainants paid the tax under protest and brought these suits to recover same.

In their respective bills, complainants charged the imposition of the use tax under the facts was in contravention of T.C.A. Section 67-3007 as being imposed upon interstate commerce which was exempt from taxation under the terms of the Section.

They, also, charged the tax constituted a burden upon interstate commerce within the prohibition of the commerce clause of the Constitution of the United States; and that the tax was discriminatory as to them.

By his answer, defendant insisted the fuel gas ceased to be in interstate commerce when it was diverted from the mains and consumed in the compressor engines.

The cases were tried upon the bills, answers, stipulations of fact and testimony of complainants' witnesses.

The Chancellor sustained the bills and awarded each complainant a recovery of the amount paid under protest. We affirm the Chancellor.

Defendant has perfected an appeal to this Court and insists the Chancellor was in error in sustaining the theory of complainants the fuel gas did not cease to be in interstate commerce when diverted from the mains to the compressor engines and consumed.

It is a taxable privilege to use or consume any tangible property in Tennessee. T.C.A. Section 67-3007.

T.C.A. Section 67-3002(m) states:

"The term 'use tax' referred to in this chapter includes the 'use,' the 'consumption,' the 'distribution,' and the 'storage' as herein defined."

T.C.A. Section 67-3007 provides:

"It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on bona fide interstate commerce. It is, however, the intention of this chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state."

██ Defendant states in his brief this Section means, and we agree, that no one incurs tax liability with respect to goods by virtue of their transportation through this State in the channels of interstate commerce; but any stoppage or bringing to rest these goods within the State for sale at retail, use, consumption, distribution or storage for subsequent use, does subject such goods to the taxing power of the State.

██ It is then argued a "taxable moment" occurred during the interval of time from the separation of the fuel gas from the mains to the compressor engines where it was consumed. The undisputed proof is the fuel gas does not come to rest after it leaves the mains and enters the compressor engines. It is in a continuous flow and never stops moving until consumed by the engines.

Thus, the fuel gas does not come to rest in the State nor does it become a part of the mass property within this State. It furnishes energy to operate the compressors which maintain the constant flow of gas through this State in interstate commerce. It is, therefore, a necessary and integral part of the interstate operation.

The fuel gas being one of the means by which the commerce is carried on, it is exempted from the use tax under the statute.

Moreover, we agree with the Chancellor the case of *Helson v. Commonwealth of Kentucky*, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683 (1929), is controlling. In Helson, the State of Kentucky attempted to tax the use of gasoline purchased outside that State. Helson and his partner resided in the State of Illinois. They operated a ferry boat across the Ohio River from Illinois to Kentucky. They maintained their business office in Illinois. The

situs of all their personal property was in Illinois. All their gasoline was purchased in Illinois. It was stipulated seventy-five per cent of the gasoline purchased was consumed in Kentucky. The Supreme Court of the United States, in holding the tax could not be imposed upon the gasoline consumed in interstate commerce, said:

"The statute here assailed clearly comes within the principle of these and numerous other decisions of like character which might be added. The tax is exacted as the price of privilege of using an instrumentality of interstate commerce. It reasonably cannot be distinguished from a tax for using a locomotive or a car employed in such commerce. A tax laid upon the use of the ferry boat would present an exact parallel. And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax which falls directly upon the use of one of the means by which commerce is carried on directly burdens that commerce. If a tax cannot be laid by a state upon the interstate transportation of the subjects of commerce, as this Court definitely has held, it is little more than repetition to say that such a tax cannot be laid upon the use of a medium by which such transportation is effected."

We are fortified in our conclusion the tax, under the undisputed facts in this record, contravenes the commerce clause of the Federal Constitution by an article of Professor Paul Hartman of Vanderbilt University, an eminent authority on taxation, wherein it is said:

"With the Helson case as the fountainhead there seems but little opportunity for a state successfully to impose a use or other enjoyment tax upon the opera-

tions of interstate commerce where the tax is upon the use of articles still considered within the stream of that commerce or upon the use of supplies or equipment actually employed in conducting the commerce." 9 Vanderbilt Law Review, 138 (1956).

We deem it unnecessary to prolong this opinion by discussing other assignments of defendant since the conclusion we have reached above is decisive of the cases.

The decree of the Chancellor is affirmed. Defendant will pay the costs.

BURNETT, CHIEF JUSTICE, and DYER, CRESON and HUMPHREYS, JUSTICES, concur.