**TEXAS EASTERN TRANSMISSION COR-
PORATION, Appellee-Complainant,**

v.

**Thomas BENSON, Commissioner of Revenue,
Appellant-Defendant.**

Supreme Court of Tennessee.

April 3, 1972.

Petition to Rehear Denied June 5, 1972.

Harris A. Gilbert, John D. Whalley, Nashville, for appellee-complainant.

David M. Pack, Atty. Gen., Milton P. Rice, Deputy Atty. Gen., State of Tennessee, Nashville, for appellant-defendant.

OPINION

DYER, Chief Justice.

This case is before us on appeal from the Chancery Court of Davidson County. The chancellor held appellee was entitled to recover certain monies paid under protest and in satisfaction of a sales tax assessed by appellant.

In this opinion the parties will be referred to as they appeared in the trial court; that is, Texas Eastern Transmission Corporation as complainant, and Thomas Benson, Commissioner of Revenue for the State of Tennessee, as defendant.

In its original bill complainant avers that it is engaged in the operation of natural gas pipelines in interstate commerce; that in order to maintain sufficient pressure in the pipelines to propel the gas to its points of distribution in the northeastern part of the United States, complainant maintains compressor stations; that these compressor stations are an integral part of the interstate transmission system; that complainant purchases electricity from the Tennessee Valley Authority to operate these compressor stations; and that the electricity was taken "directly off . . . transmission grid lines in interstate commerce." Complainant further avers that defendant assessed a tax against complainant for the period from June 1, 1963, to December 31, 1966, which was paid under protest and that such assessment and collection was in violation of the statutes of this State, and the Constitution of the United States, for various reasons.

These reasons are: (1) that the tax is in contravention of the provisions of T.C.A. § 67–3007; (2) that the tax is a "direct burden upon interstate commerce within the prohibition of Article I, Section 8, Clause 3 (the Commerce Clause) of the Constitution of the United States . . .;" (3) that the tax is a discriminatory burden upon interstate commerce in that "manufacturers" within the State of Tennessee are taxed at the lower rate of one per cent, or are totally exempt from taxation for their use of electricity pursuant to T.C.A. § 67–3003(g); while complainant is taxed at a rate of three per cent, all of which is in violation of the commerce clause and the Fourteenth Amendment of the Constitution of the United States; (4) that defendant has construed the provisions of Title 67, Chapter 30, of Tennessee Code Annotated, so that other "transportation companies" similarly situated are granted a "discriminatory use tax exemption" in violation of the Fourteenth Amendment to the Constitution of the United States.

Defendant rebuts the averments by denying that the electricity is in interstate commerce, and affirmatively alleges that the "electricity is never in interstate commerce but is sold and delivered from a Tennessee vendor to a Tennessee vendee, with both sale and delivery taking place wholly within Tennessee." In addition, defendant alleges that the tax imposed upon the sale of the electricity which was a "local event" and that since the vendor, as an agency of the Federal Government is immune from state taxation, the tax in the instant case was collected "from the one secondarily liable," the vendee. Defendant furthermore denies that the tax is a burden upon interstate commerce or that the provisions of the Sales Tax Act and the construction of these provisions by defendant contravenes the due process and equal protection clauses of the Fourteenth Amendment.

The evidence presented below, which consists of the testimony of witnesses and the stipulation of the parties, is as follows:

Complainant is a Delaware corporation qualified to do business in the State of Tennessee. Complainant operates pipelines that transport natural gas from the states of Texas and Louisiana to points of destination in the states of New York and New Jersey. Part of the pipeline system is located in the State of Tennessee.

Natural gas lacks an inherent capability of self-propulsion through the pipeline which necessitates the complainant to repressurize the gas by a series of compressor stations located throughout the transmission system. The function of these compressor stations is to increase the pressure of the natural gas so as to assure a continuous flow to the points of designation in the northeast.

In Tennessee complainant operates two compressor stations. These are at Gladeville and Mount Pleasant. Both of these stations are equipped with centrifugal compressors which raise the pressure of the gas. The "energy fuel" used to power the centrifugal compressors is electricity purchased from the Tennessee Valley Authority. The electricity is taken from TVA's

high voltage transmission lines and goes through a "step down transformer" to reduce the voltage to a usable level. There was testimony by one of complainant's witnesses that the electricity is consumed immediately upon entering the station and that it never comes to rest within Tennessee.

Complainant also introduced evidence that the TVA system operates in interstate commerce. The electricity used to power the Mount Pleasant compressor station was generated at Wheeler Dam in Alabama, while Davidson County, where the Gladeville Station is located, is primarily supplied electricity from Paradise Generating Station in Kentucky.

It has been stipulated by the parties that TVA is immune from state taxation for its sales of electrical power. TVA does make certain payments in lieu of taxes to the states in which it operates. See 16 U.S.C.A. § 831*l.*

The chancellor in his memorandum opinion felt that there was no difference between the facts of the instant case and those of our recent decision in Texas Gas Transmission Corporation v. Benson, 223 Tenn. 279, 444 S.W.2d 137 (1969). However, the two cases are distinguishable on strong facts. The tax sought to be imposed in the *Texas Gas* case was a use tax on the interstate pipelines and gas "used" to propel the compressors in furtherance of the main stream's interstate journey. In the instant case the event sought to be taxed is a sale of electricity between the supplier of current, TVA, amd the complainant.

■ The complainant states the first issue to be decided in the following language:

May Tennessee assess a sales tax on electricity where a natural gas pipeline company engaged solely in interstate commerce purchases in Louisiana from the Tennessee Valley Authority electricity to be used in a number of states, and such electricity, being part of interstate commerce, is transmitted directly from the interstate transmission into the compressors which are furnishing power to the flow of natural gas in interstate commerce, where the electricity does not stop or come to rest?

Under this question the complainant relies upon T.C.A. § 67–3007, which statute reads as follows:

It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on bona fide interstate commerce. It is, however, the intention of this chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state.

While this provision is a recognition by the Legislature that there are constitutional limitations upon the power of a state to levy a tax upon goods moving in interstate commerce, it presumably intended to extend the taxing power of the State of Tennessee to the fullest extent allowed under the Commerce Clause.

Complainant, construing T.C.A. § 67–3007 in para materia with the taxing statute, T.C.A. § 67–3003, argues as follows: That it was the intention of the Legislature to levy a tax on *sale at retail,* or the *use,* or the *consumption,* or the *distribution,* or the *storage* of tangible personal property *after* it had come to rest in this State and had become a part of the mass of the property in this State. That the electricity used by complainant is not taxable since it comes into the state by interstate commerce, and at no time comes to rest in this state or becomes a part of the mass of the property in this state.

As noted above, T.C.A. § 67–3003 levies a tax on "tangible personal property." T.C.A. § 67–3002(*l*) describes "tangible personal property" as meaning and including "personal property which may be seen, weighed, measured, felt or touched . . . ." Under this definition electricity would be included as it can be measured and/or felt. Also, the sales tax as originally enacted in this State exempted "electric power" by an exemption section, now T.C.A. § 67–3012. By Chapter 38, Public Acts of 1963, the Legislature removed "electric power or energy" from this exemption section. It is clear the Legislature intended to levy a tax on electricity for sale at retail or use, consumption, distribution or storage thereof.

The difficulty here arises from the nature of electric power. The same difficulty was presented in Utah Power and Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038 (1932). In *Utah* the taxpayer was a utility operating a plant in the State of Idaho to generate, transmit and distribute electric power in interstate commerce. The State of Idaho levied a license tax on production of electricity and electrical energy within the state, when such was for sale, *barter* or exchange; also, made statutory provisions for measuring the electrical energy at the point of production, the tax being based on kilowatt hours produced. The issue was made that this tax was not permissible under the commerce clause of the Constitution of the United States in that the production and transmission of electrical power across state lines was an identical or physically inseparable process. The court in rejecting this contention said:

Upon the facts of the present case, is the generation of electrical energy, like manufacture or production generally, a process essentially local in character and complete in itself; or is it so linked with the transmission as to make it an inseparable part of a transaction in interstate commerce? From the strictly scientific point of view, the subject is highly technical; but in considering the case, we must not lose sight of the fact that taxation is a practical matter, and that what constitutes commerce, manufacture, or production is to be determined upon practical considerations.

Electrical energy has characteristics clearly differentiating it from the various other forms of energy, such as chemical energy, heat energy, and the energy of falling water. Appellant here, by means of what are called generators, converts the mechanical energy of falling water into electrical energy. Thus, by the application of human skill, a distinct product is brought into being and transmitted to the places of use. The result is not merely transmission; nor is it transmission of the mechanical energy of falling water to the places of consumption; but it is, first, conversion of that form of energy into something else, and, second, the transmission of that something else to the consumers. While conversion and transmission are substantially instantaneous, they are, we are convinced, essentially separable and distinct operations. The fact that to ordinary observation there is no appreciable lapse of time between the generation of the product and its transmission does not forbid the conclusion that they are, nevertheless, successive and not simultaneous acts.

\* \* \* \* \* \*

The apparent difficulty in perceiving the analogy arises principally from the fact that electrical energy is not a substance; at least in common meaning. It cannot be bought and sold as so many ounces or pounds, or so many quarts or gallons. It has neither length, breadth, nor thickness. But that it has actual content of some kind is clear, since it is susceptible of mechanical measurement with the necessary certainty to permit quantitative units to be fixed for purposes of barter, sale, and exchange. However lacking it may be in body or substance, electrical energy, nevertheless, possesses many of the ordinary tokens of material-

ity. It is subject to known laws; manifests definite and predictable characteristics; may be transmitted from the place of production to the point of use and there made to serve many of the practical needs of life. 286 U.S. 165, 179, 180, 52 S.Ct. 548, 551.

Electricity as a taxable item of tangible personal property requires us to take a very practicable approach. Electricity, by its very nature, never comes to rest or becomes a part of the mass of anything. Electricity could be described as sui generis. Nevertheless, electricity is a commodity which is gathered, harnessed and processed for sale. Each act is not simultaneous, but rather successive and separable. We deem the preparation for sale through TVA "step down" transformers as a separate local activity; if you will, a breaking of the package, before a rededication of the property to interstate commerce. See Eastern Air Transport v. South Carolina Tax Commission, 285 U.S. 147, 52 S.Ct. 340, 76 L.Ed. 673 (1932).

Here we have an item of tangible personal property the Legislature clearly intended to tax where there was a "sale" of such in Tennessee. The Legislature has defined a "sale" by T.C.A. § 67–3002, as being the transfer of title, possession or both. When TVA sold and delivered this electricity to complainant, there was a local taxable sale in Tennessee.

■ The second question raised by complainant is that the sales tax is levied on the seller, in this case TVA, which seller, as an agency of the United States Government, enjoys immunity from state taxation. We agree if this is a tax on TVA such is invalid. United States of America v. County of Allegheny, Pa., 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944).

The State in its answer admits under the sales tax by T.C.A. § 67–3003, the primary liability is upon the seller, but in this case the seller being immune and refusing to collect the tax, then the State has proceeded to collect from one secondarily liable; in this case the complainant.

Title 67, Chapter 30, of Tennessee Code Annotated, embodies in its provisions an obvious and clear scheme of taxation. This system of taxation contemplates a sales tax to be levied on the vendor, T.C.A. § 67–3003, and a complementary use tax to be levied upon the entirely distinct privilege of importing tangible property into Tennessee for its use here, T.C.A. § 67–3005. The overall scheme envisions a system of taxation where the tax is due because of a sales transaction within the state, or, where the tax is due because of the importation of property in the state for use here. Nevertheless, there is a theme of equality which runs through the main stream of all these statutory provisions. Both the sales tax, T.C.A. § 67–3003, and the use tax, T.C.A. § 67–3005, provide that the tax cannot be levied where it would result in a duplication of tax. T.C.A. § 67–3008, in like manner allows credit for taxes paid in other states. This system of taxation presupposes that all tangible personal property is subject to a sales tax, be it either in Tennessee or in another state. The purpose of such a system is readily perceived. No one who purchases property in Tennessee is to be exempt from the sales tax except to the extent that he has paid a use or sales tax somewhere. Thus, Tennessee has a complete system of sales taxation such as exists in other states. See Heneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1936) (Washington Sales and Compensatory Tax); Chicago Bridge & Iron Co. v. Johnson, 19 Cal.2d 162, 119 P.2d 945 (1941) (California Sales and Use Tax); Southeastern, Inc. v. Oklahoma Tax Commission, 351 P.2d 739 (Okl.1960) (Oklahoma Sales and Use Tax).

While it is true that the sales tax section of the law, T.C.A. § 67–3003, refers to "use" as a reason for taxation, the reference is to use after sale. It is the event of the sale that triggers the tax levied upon the user under this section. The tax is due

because of the sale, not solely because of use.

This simply means that the taxable incident aimed at by this "use" aspect of the law is the sales transaction. Where there has been a sale, a tax is due and payable, first from the vendor, if it can be collected from him, and then, if not, from the vendee or the user of the property. In the latter case, the tax is collected, not as a use tax, but as a sales tax.

The fact that the sales tax has to be paid by the user, because it cannot be collected from a constitutionally exempt vendor does not alter the nature of the transaction. The electricity was sold in Tennessee for use in Tennessee so that the sales statute applies, and the tax arising because of the in-state sale and subsequent use may be constitutionally collected as a sales tax with the legal incidence of the tax upon the vendee or user. See New Jersey Bell Telephone Co. v. State etc., 280 U.S. 338, 50 S.Ct. 111, 74 L.Ed. 463 (1930); Eastern Air Transport, Inc. v. South Carolina etc., *supra*; (Hartman, State Taxation of Interstate Commerce, pp. 131–133).

Our conclusion that the tax involved is a sales tax, and collectible from a user, is in keeping with the statutory scheme designed by our General Assembly.

■ The third question raised by complainant is that unless the tax were to be assessed at a one per cent rate rather than three per cent of the sales price, the tax would be an invidious discrimination under the equal protection clause of the Constitutions of Tennessee and United States against an interstate pipeline carrier, since a one per cent rate is assessed against other similar purchasers and users of electricity, "manufacturers" and "processors" under T.C.A. § 67–3003(g).

The defendant argues that the preferred tax rate is granted by Tennessee, not to intrastate commerce as such, but to manufacturers, whose business may be interstate, intrastate, or both.

The sub-section in question defines a manufacturer as follows:

For the purpose of this provision a manufacturer is defined as one whose principal business is fabricating or processing tangible personal property for resale.

We construe this provision to be a reasonable classification to encourage manufacturing, and not an invidious discrimination under the Constitution, as all "manufacturers," intrastate or interstate, are treated equally. The complainant is, by admission, engaged in the business of transporting petroleum products and is, therefore, ineligible for the preferred tax rate.

The final question raised by complainant pertains to an alleged "discriminatory use tax exemption" extended to other "transportation companies" similarly situated to the complainant's position.

This contention is premised upon the assumption that the tax imposed in the instant case was a use tax. Our holding that the tax assessed was a sales tax upon a sales transaction occurring wholly in Tennessee renders this issue moot.

The judgment of the trial court is reversed and the bill is dismissed.

HUMPHREYS, J., and JENKINS, Sp. J., concur.

CRESON, J., dissents.

McCANLESS, J., not participating.

CRESON, Justice (dissenting).

I must disagree with the majority. The instant case is before us on appeal from the Chancery Court of Davidson County, Part I. The Chancellor held that appellee was entitled to recover certain monies paid in satisfaction of a sales tax obligation as-

sessed by appellant. The payment was made under protest, and the present suit instituted to recover the same pursuant to T.C.A. § 67–2303 et seq.

In this opinion the parties will be referred to as they appeared in the trial court; that is, Texas Eastern Transmission Corporation, as complainant, and Thomas Benson, Commissioner of Revenue for the State of Tennessee, as defendant.

In its original bill complainant avers that it is engaged in the operation of natural gas pipelines in interstate commerce; that in order to maintain sufficient pressure in the pipelines to propel the gas to its points of distribution in the northeastern part of the United States complainant maintains compressor stations; that these compressor stations are an integral part of the interstate transmission system; that complainant purchases electricity from the Tennessee Valley Authority to operate these compressor stations; and that the electricity was taken "directly off . . . transmission grid lines in interstate commerce." Complainant further avers that defendant assessed a tax against complainant for the period from June 1, 1963, to December 31, 1966, which was paid under protest and that such assessment and collection was in violation of the statutes of this State and the Constitution of the United States for various reasons.

These reasons are: (1) that the tax is in contravention of the provisions of T.C.A. § 67–3007; (2) that the tax is a "direct burden upon interstate commerce within the prohibition of Article I, Section 8, Clause 3 (the Commerce Clause) of the Constitution of the United States . . . " ; (3) that the tax is a discriminatory burden upon interstate commerce in that "manufacturers" within the State of Tennessee are taxed at the lower rate of one per cent or are totally exempt from taxation for their use of electricity pursuant to T.C.A. § 67–3003(g), while complainant is taxed at a rate of three per cent, all of which is in violation of the Commerce Clause and the Fourteenth Amendment of the Federal

Constitution; (4) that defendant has construed the provisions of Title 67, Chapter 30 of Tennessee Code Annotated so that other "transportation companies" similarly situated are granted a "discriminatory use tax exemption" in violation of the Fourteenth Amendment to the Constitution of the United States.

Defendant, meeting the averments interposed against him, denies that the electricity is in interstate commerce, but rather affirmatively alleges that the "electricity is never in interstate commerce but is sold and delivered from a Tennessee vendor to a Tennessee vendee, with both sale and delivery taking place wholly within Tennessee." In addition defendant alleges that the tax was imposed upon the sale of the electricity which was a "local event" and that since the vendor, as an agency of the Federal Government is immune from state taxation, the tax in the instant case was collected "from the one secondarily liable", the vendee. Defendant furthermore denies that the tax is a burden upon interstate commerce or that the provisions of the Sales Tax Act and the construction of these provisions by defendant contravenes the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

The evidence presented below, which consists of the testimony of witnesses and the stipulation of the parties, is as follows:

Complainant is a Delaware corporation qualified to do business in the State of Tennessee. Complainant operates pipelines that transport natural gas from the states of Texas and Louisiana to points of destination in the states of New York and New Jersey. Part of the pipeline system is located in the State of Tennessee.

In connection with this transmission system complainant maintains compressor stations. The function of these compressor stations is to increase the pressure of the natural gas so that it will be propelled to the points of destination in the northeast. Without the compressor stations, the gas would not have sufficient pressure to pass

through the transmission system. In other words, the repressurization of the gas at the stations is essential and indispensable in the operation of the pipeline system.

In Tennessee, complainant operates two compressor stations. These are at Gladeville and Mount Pleasant. Both of these stations are equipped with centrifugal compressors which raise the pressure of the gas. The "energy fuel" used to power the centrifugal compressors is electricity purchased from the Tennessee Valley Authority. The electricity is taken fron TVA's high voltage transmission lines and goes through a "step down transformer" to reduce the voltage to a usable level. There was testimony by one of complainant's witnesses that the electricity is consumed immediately upon entering the station and that it never comes to rest within Tennessee.

Complainant also introduced evidence that the TVA system operates in interstate commerce. The electricity used to power the Mount Pleasant compressor station was generated at Wheeler Dam in Alabama, while Davidson County, where the Gladeville Station is located, is primarily supplied electricity from Paradise Generating Station in Kentucky.

It has been stipulated by the parties that TVA is immune from state taxation for its sales of electrical power. TVA does make certain payments in lieu of taxes to the states in which it operates. See 16 U.S.C. A. § 831(*l*).

The tax in the instant case was levied pursuant to the provisions of T.C.A. § 67–3003. The pertinent part of this statute is:

*"Levy of tax—Rate.*—It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, or who uses or consumes in this state any item or article of tangible personal property as defined in this chapter, irrespective of the ownership thereof or any tax immunity which may be enjoyed by the owner thereof, or who is the recipient of any of the things or services taxable under this chapter, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined in this chapter, or who leases or rents such property, either as lessor or lessee, within the state of Tennessee."

The legislative intent to exempt interstate commerce from the provisions of Chapter 30 of Title 67 is set forth in T.C.A. § 67–3007. It is:

*"Interstate commerce exempt.*—It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on bona fide interstate commerce. It is, however, the intention of this chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state."

Article I, Section 8, Clause 3 of the United States Constitution, commonly called the Commerce Clause, provides:

*"Powers of congress.*—The congress shall have power . . . to regulate commerce with foreign nations, and among the several states, and with the Indian tribes; . . ."

The sole question presented in this case is whether or not complainant was legally obligated to pay the sales tax for the purchases of electricity in view of T.C.A. § 67–3007 and the decisions of the United States Supreme Court construing the Commerce Clause.

Defendant earnestly insists that T.C.A. § 67–3007 is a recognition by the Legislature that there are constitutional limitations upon the power of a State to levy a tax upon goods moving in interstate commerce, but the provisions should be construed to extend the taxing power of the State of Tennessee to the fullest extent allowed under the Commerce Clause. Assuming but without deciding that this was the intention of the General Assembly, we think that the tax imposed in the instant case is beyond the permissible reach of state power.

The rule is well established that a state may not levy a tax upon property moving in interstate commerce. The taxing power of a state does not attach to property unless it has left the stream of commerce and become a part of the "mass of property within the State". Independent Warehouses v. Scheele (1946) 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346; State of Minnesota v. Blasius (1933) 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131. The purpose of this rule is to exonerate interstate commerce from the burden of having to pay taxes in every state through which it passes or pauses on its interstate journey.

From the abovementioned rule a corollary follows in reason and logic. It is that while a state may tax local activities that are pursued in connection with interstate commerce, the Commerce Clause forbids the imposition of a tax upon an activity which is an integral, inseparable part of the movement in commerce itself. Michigan-Wisconsin Pipe Line Co. v. Calvert (1954) 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583. A privilege tax upon an integral, inseparable part of the process of interstate commerce is no less interdicted than a tribute exacted from the commerce itself.

In determining whether a tax unduly interferes with the flow of commerce so as to amount to a regulation thereof, we must take a very practical approach. Railway Express Agency, Inc. v. Commonwealth of Virginia (1954) 347 U.S. 359, 74 S.Ct. 558, 98 L.Ed. 337. The tax in the instant case does not fall upon a local or intrastate activity collaterally associated with interstate commerce, but rather the impact of the assessment is on the transmission of natural gas in interstate commerce. Defendant has attempted to extend the taxing power of this state to the very activity which the Commerce Clause seeks to protect.

Chancellor Lentz' memorandum opinion aptly stated:

"Upon reading the pleadings, I could not see any difference in this case and the other gas transmission cases heretofore decided by this Court and affirmed by our Supreme Court. At the beginning of the hearing counsel for the parties were asked what is the difference between the present case and the gas transmission cases previously decided. A very short reply by counsel for the complainant was 'There is no difference.' After hearing proof, argument and considering the briefs of both parties, I am of the opinion that when counsel for the complainant stated there was 'no difference' he was absolutely correct."

The trial judge is both quite perceptive and well experienced in the field of cases of this character. He invariably approaches and reaches decisions in them with a laudable, discriminating and balanced composure.

In addition, the opinion of Mr. Justice Chattin in Texas Gas Transmission Corp. v. Benson, Commissioner of Revenue of the State of Tennessee (1969) 223 Tenn. 279, 444 S.W.2d 137, states, in a highly creditable manner, what, in my judgment, is the law of Tennessee applicable to the instant case.

Both during the oral argument of this case and in close reading of the Commissioner's brief, we had a somewhat uneasy felling that there was considerable hairsplitting in the air, even to the point of obscuring the more substantial elements present in both the facts of this case and

the principles heretofore enunciated by the United States Supreme Court and this Court, which lead inevitably to the conclusion that the taxpayer's position is sound and should be sustained. It simply will not do to permit tax liabilities or litigations concerning them to be determined in a contest of semantics; and this Court should not do so.

I would affirm the judgment below.