MISSISSIPPI RIVER TRANSMISSION CORPORATION *v.*
Richard A. WEISS, Director of the
Department of Finance and Administration
of the State of Arkansas

01-527                                          65 S.W.3d 867

Supreme Court of Arkansas
Opinion delivered February 7, 2002

*Horne, Hollingsworth & Parker, A Professional Association*, by: *Michael O. Parker*, for appellant.

*Michael J. Wehrle*, for appellee.

R OBERT L. BROWN, Justice. This is an illegal-exaction case. The appellant is Mississippi River Transmission Corporation (MRT). The appellee is Richard A. Weiss, in his official capacity as the Director of the Arkansas Department of Finance and Administration (DFA). Both parties moved for summary judgment, and summary judgment was entered in favor of DFA. MRT appeals the trial court's grant of summary judgment to DFA on the issue of whether certain natural gas is taxable under the Arkansas use tax. MRT essentially raises two points on appeal: (1) whether an amendment to the statutory come-to-rest requirement is best left to the General Assembly; and (2) whether the come-to-rest requirement was complied with in this case. We agree with MRT on both points and reverse the order of summary judgment in favor of DFA. We further direct the trial court to enter summary judgment in favor of MRT.

The facts of this case are stipulated to by the parties. MRT is a natural gas pipeline company incorporated in Delaware with its principal place of business in St. Louis, Missouri. MRT owns and operates roughly 2,000 miles of natural gas pipeline and has four pipelines that pass through Arkansas, comprising approximately 300 miles of pipeline. Almost all of the gas transported by MRT's lines originates outside of Arkansas.

At eight points along MRT's Arkansas pipelines, compressor stations provide the force necessary to move the natural gas through the pipelines. These compressor stations consist of combustion engines, called compressor units, with various piping to facilitate the movement of the natural gas in and around the compressor units. The compressor units are fueled by natural gas diverted from the pipeline into the units. This gas is in constant motion until it reaches the combustion chamber of the compressor unit, where it is immediately ignited and fuels the engine. The compressor gas residue is discharged into the air as exhaust. The compressor unit pressurizes the natural gas not used to fuel the units and then sends the pressurized gas back into the pipeline.

Prior to November 1, 1993, MRT owned almost all of the natural gas that ran through its pipeline. However, pursuant to Federal Energy Regulatory Commission regulations, after November 1, 1993, MRT was prohibited from transporting its own natural gas through its pipelines. Instead, it contracted with its customers to provide gas-shipment services though its pipelines. These customers, in turn, provided the compressor gas in kind, the cost of which was deducted from their shipping contracts.

When MRT owned the natural gas, DFA taxed the gas used in the compressor units as a gross receipts or sales tax. This sales tax was predicated on MRT's ownership of the natural gas. *See* Ark. Code Ann. § 26-52-103(a)(4)(B)(i) (Supp. 2001). This court upheld the levy of a comparable sales tax on compressor gas in *Pledger v. Arkla, Inc.*, 309 Ark. 10, 827 S.W.2d 126 (1992), and concluded that the tax was not a burden on interstate commerce. After MRT ceased owning the gas, DFA decided it could no longer tax the gas used in the compressor units as a sales tax. DFA then began taxing the owners of the gas used in the compressor units as a use tax. In 1996, this court held that a use tax could not be levied against the gas owners, because the right to use the gas arose outside of Arkansas, and, thus, any taxable use occurred outside of the state. *See Boral Gypsum, Inc. v. Leathers*, 325 Ark. 272, 924 S.W.2d 805 (1996).

After the *Boral Gypsum* decision, DFA decided it could no longer hold MRT's customers responsible for the use tax, because they were out-of-state owners. Instead, DFA opted to hold MRT responsible for the use tax on the compressor gas as the pipeline owner. DFA conducted a use tax audit of MRT from January 1, 1992, through December 31, 1994, and the audit resulted in an assessment of taxes against MRT for a variety of items. One item in the proposed assessment was a use tax on the compressor fuel for the fourteen-month period from November 1, 1993, to December 31, 1994. DFA's final assessment for the use tax owing on the compressor gas for this period was $111,744.70 with $28,185.23 as added interest.

On May 26, 1999, MRT filed its complaint and alleged that the imposed use tax was contrary to the statute, Ark. Code Ann. § 26-53-106(b) (Repl. 1997), because its compressor gas never came to rest in Arkansas within the meaning of the statute. Both parties then filed cross motions for summary judgment and entered into a stipulation of facts. The trial court held that the compressor gas was removed from commerce and sufficiently ended. The court, accordingly, entered summary judgment in favor of DFA.

MRT raises essentially the same issue under two of its points on appeal: is an amendment to the come-to-rest requirement under § 26-53-106(b) solely a matter for legislative action and not judicial interpretation?

■ The come-to-rest test grew out of a case handed down by the United States Supreme Court in 1929. *See Helson v. Kentucky*, 279 U.S. 245 (1929). In *Helson*, the Commonwealth of Kentucky sought to tax gasoline used to propel a ferryboat across the Ohio River between Kentucky and Illinois. The Court recited the basic principles of the interstate commerce clause as they relate to a state's power to tax or regulate interstate commerce:

> Regulation of interstate and foreign commerce is a matter committed exclusively to the control of Congress, and the rule is settled by innumerable decisions of this court, unnecessary to be cited, that a state law which directly burdens such commerce by taxation or otherwise constitutes a regulation beyond the power of the state under the Constitution. It is likewise settled that transportation by ferry from one state to another is interstate commerce and immune from the interference of such state legislation. The power vested in Congress to regulate commerce embraces within its control all the instrumentalities by which that commerce may be carried on. A state cannot lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on. While a state has power to tax property having a situs within its limits, whether employed in interstate commerce or not, it cannot interfere with interstate commerce through the imposition of a tax which is, in effect, a tax for the privilege of transacting such commerce.

*Helson*, 279 U.S. at 248-49 (citations and quotations omitted). Without establishing a clear test, the Court went on to hold that Kentucky could not impose the tax on ferryboat gasoline, because the tax would discourage interstate transportation. Eight years later, the Court revisited the issue and developed the come-to-rest test. *See Henneford v. Silas Mason Co.*, 300 U.S. 577 (1937). In the *Silas Mason Co.* case, Justice Cardozo wrote on behalf of the Court: "A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate. . . . The tax upon the use after the property is at rest is not so measured or conditioned as to hamper the transactions of interstate commerce or discriminate against them." *Silas Mason Co.*, 300 U.S. at 583.

■ Arkansas enacted its first use tax statute in 1949. *See* "The Arkansas Compensation Tax Act of 1949," 1949 Ark. Acts 487. At the time, the Act conformed to the prevailing jurisprudence handed down by the United States Supreme Court regarding use taxes and the limitations put on states by the interstate commerce clause of the United States Constitution. *See* U.S. Const. Art. I, § 8, cl. 3; *Henneford v. Silas Mason Co., supra; Helson v. Kentucky, supra.* The Act required that any item of tangible personal property not subject to the Arkansas sales tax was subject to the Arkansas use tax, so long as "the transportation of such article has finally *come to rest* within this State or until such article has become *commingled* with the general mass of property of this State." Act 487, § 5(a), now codified as Ark. Code Ann. § 26-53-106(b) (Repl. 1997) (emphasis added).

The come-to-rest principle prevailed for constitutional purposes until 1977, when the United States Supreme Court visited the issue once more. *See Complete Auto Transit Inc. v. Brady,* 430 U.S. 274 (1977). The *Complete Auto Transit* Court quoted with approval the Mississippi Supreme Court's analysis of the tax at issue:

> It will be noted that Taxpayer has a large operation in this State. It is dependent upon the State for police protection and other State services the same as other citizens. It should pay its fair share of taxes so long, but only so long, as the tax does not discriminate against interstate commerce, and there is no danger of interstate commerce being smothered by cumulative taxes of several states. There is no possibility of any other state duplicating the tax involved in this case.

*Complete Auto Transit,* 430 U.S. at 277. The four factors set out by the Mississippi Supreme Court have become the prevailing constitutional test for whether a tax burdens interstate commerce: (1) whether the activity sought to be taxed has a substantial nexus to the taxing state; (2) whether the tax is fairly apportioned with taxes paid to other states (*e.g.,* whether there is a mechanism to avoid double taxation such as a setoff of taxes paid to other states); (3) whether the tax discriminates against interstate commerce (*e.g.,* whether the tax is born of economic protectionism, calculated to encourage buyers to buy only in-state goods or services); and (4) whether the tax is fairly related to services provided by the taxing state. *See D.H. Holmes Co. v. McNamara,* 486 U.S. 24 (1988) (employing the four *Complete Auto Transit* factors). Since 1977, the Arkansas General Assembly has not amended the come-to-rest language in the use tax statute (§ 26-53-106(b)) to reflect the changes

in commerce clause jurisprudence announced in *Complete Auto Transit.*[1]

This court has applied the *Complete Auto Transit* factors to our sales tax statute when a sales tax was levied on compressor gas. *See Pledger v. Arkla, Inc., supra.* However, the sales tax statute at issue in *Pledger*, Ark. Code Ann. § 26-53-301(Repl. 1991), had no come-to-rest language as does the use tax statute. Thus, the fact that this court used the *Complete Auto Transit* test in *Pledger* has no application to the case at hand.

■ We decline to adopt the *Complete Auto Transit* factors and substitute them for the come-to-rest test, when our General Assembly has enacted the come-to-rest requirement and that test is still part of the statute. We observe in this regard that the *Complete Auto Transit* decision was decided by the Court in 1977, and the General Assembly has had twelve opportunities since that time to amend the use tax statute and substitute the less stringent substantial nexus test set out in *Complete Auto Transit*. It has not done so. For these reasons, we agree with MRT that we should apply the come-to-rest standard in the use tax statute just as we find it codified at § 26-53-106(b) and not amend it by judicial decision to substitute the *Complete Auto Transit* test.

We turn next to the issue of whether the compressor gas in question meets the come-to-rest test. MRT argues that its compressor gas does not stop within the meaning of § 26-53-106(b), before it is ignited and consumed at the compressor stations. As such, it claims that the gas cannot be taxed by DFA under the use tax provision of the Tax Code. DFA responds that the compressor gas does come to rest at the same time it ignites in the combustion chambers of the compressor units and is consumed. The trial court, in upholding the tax, agreed with DFA and cited the *Complete Auto Transit* factors. The court further recognized that our statute still imposes the come-to-rest test but concluded that when the compressor gas was consumed, it came to rest within the meaning of the statute. Thus, it was taxable.

■ This case presents an issue of statutory interpretation within the context of a grant of summary judgment. We have repeatedly held that summary judgment is to be granted by a trial court only

---

[1] In the 1999 Legislative Session, Senate Bill 445 was introduced which would have removed the come-to-rest language from the use tax statute. The bill was withdrawn by its sponsor.

when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See, e.g., Worth v. City of Rogers,* 341 Ark. 12, 14 S.W.3d 471 (2000); *George v. Jefferson Hosp. Ass'n, Inc.,* 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs,* 327 Ark. 577, 940 S.W.2d 445 (1997). In this case, the facts are undisputed and were stipulated to by the parties. There were also cross motions for summary judgment. As such, the case was decided purely as a matter of statutory interpretation.

██ █ We review issues of statutory interpretation *de novo,* as it is for this court to decide what a statute means. *Fewell v. Pickens,* 346 Ark. 246, 57 S.W.3d 144 (2001); *Hodges v. Huckabee,* 338 Ark. 454, 995 S.W.2d 341 (1999). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Harris v. City of Little Rock,* 344 Ark. 95, 40 S.W.3d 214 (2001); *Norman v. Norman,* 342 Ark. 493, 30 S.W.3d 83 (2000). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Raley v. Wagner,* 346 Ark. 234, 57 S.W.3d 683 (2001); *Dunklin v. Ramsay,* 328 Ark. 263, 944 S.W.2d 76 (1997).

██ When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Stephens v. Arkansas Sch. for the Blind,* 341 Ark. 939, 20 S.W.3d 397 (2000); *Burcham v. City of Van Buren,* 330 Ark. 451, 954 S.W.2d 266 (1997). When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Stephens v. Arkansas Sch. for the Blind, supra* (citing *State v. McLeod,* 318 Ark. 781, 888 S.W.2d 639 (1994)). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Ford v. Keith,* 338 Ark. 487, 996 S.W.2d 20 (1999); *Kildow v. Baldwin Piano & Organ,* 333 Ark. 335, 969 S.W.2d 190 (1998). An additional rule of statutory construction in the area of taxation cases is that when we are reviewing matters involving the levying of taxes, any and all doubts and ambiguities must be resolved in favor of the taxpayer. *Barclay v. First Paris Holding Corp.,* 344 Ark. 711, 42 S.W.3d 496 (2001); *Central and Southern Cos. v. Weiss,* 339 Ark. 76, 3 S.W.3d 294 (1999).

Although our court has never directly addressed the issue before us today, other jurisdictions have. The Tennessee Supreme

Court, in a pre-*Complete Auto Transit* case directly on point with this one, held that natural gas used to power compressor units does not come to rest for purposes of the use tax. *See Texas Gas Transmission Corp. v. Benson*, 223 Tenn. 279, 444 S.W.2d 137 (1969). In so holding, the court noted:

> The undisputed proof is the fuel gas does not come to rest after it leaves the mains and enters the compressor engines. It is in a continuous flow and never stops moving until consumed by the engines.
>
> Thus, the fuel gas does not come to rest in this State, nor does it become a part of the mass of property within this State. It furnishes energy to operate the compressors which maintain the constant flow of gas through this State in interstate commerce. It is, therefore, a necessary and integral part of the interstate operation.
>
> The fuel gas being one of the means by which the commerce is carried on, it is exempted from the use tax under the statute.

*Texas Gas Transmission Corp.*, 223 Tenn. at 284, 444 S.W.2d at 138. The Tennessee Supreme Court interpreted the come-to-rest provision in the statute literally in holding that the natural gas did not cease movement, and, thus, was not subject to the use tax. The Michigan Court of Appeals followed *Texas Gas Transmission Corp.* and reached the same conclusion in *Michigan Wisconsin Pipe Line Co. v. State*, 58 Mich. App. 318, 227 N.W.2d 334 (1975). In that case, the Michigan Supreme Court, in denying the use tax, emphasized that the fact the compressor gas was in transit when consumed was uncontested.

While *Michigan Wisconsin Pipeline Co., supra,* and *Texas Gas Transmission Corp. v. Benson, supra,* were statutory interpretation cases, both opinions relied on the United States Supreme Court's interstate commerce clause jurisprudence. Both were written before the *Complete Auto Transit* decision, and both cited favorably the Supreme Court's reasoning in *Helson v. Kentucky, supra,* in holding that the natural gas should not be taxed as that would be taxing an instrumentality of interstate commerce.

■ An examination of the plain language of § 26-53-106(b) supports the same conclusion as that reached by the appellate courts in *Texas Gas Transmission Corp. v. Benson, supra,* and *Michigan Wisconsin Pipeline Co. v. State, supra.* Section 26-53-106(b) reads:

(b) This tax will not apply with respect to the storage, use, distribution, or *consumption* of any article of tangible personal property purchased, produced, or manufactured outside this state until the transportation of the article has finally *come to rest* within this state or until the article has become commingled with the general mass of property of this state.

Ark. Code Ann. § 26-53-106(b) (Repl. 1997) (emphasis added). The emphasized portions of this statute clearly reveal that under its plain language, the General Assembly did not intend for consumption of a product to be the equivalent of its coming to rest. Rather, the statute contemplates that property must first come to rest *before* it is consumed in order for it to be taxable. Otherwise, the come-to-rest requirement would be meaningless. In this case, the parties have stipulated to the fact that the gas remains in continuous motion until it is ignited.

Only one court has held to the contrary. In *Columbia Gulf Transmission Co. v. Broussard*, 653 So. 2d 522 (La. 1995), the Louisiana Supreme Court stated:

When the natural gas compressor fuel is consumed, it comes to rest and becomes a part of the state's property. Fuel must necessarily come to rest as it is consumed. It ceases to exist; it is terminated; it is used in Louisiana; it cannot be taxed in another state. Thus, the natural gas is subject to tax when it is consumed in the state under the language of the statute.

*Columbia Gulf Transmission Co.*, 653 So. 2d at 523-24. The Louisiana Supreme Court was construing a use tax statute written exactly like the Arkansas use tax statute, and the facts of the Louisiana case are virtually indistinguishable from the case at hand. The Louisiana court, however, applied the *Complete Auto Transit* factors. We simply disagree with the interpretation of the Louisiana court and do so on the basis of the plain language of the Arkansas statute, which requires that the natural gas come to rest prior to consumption.

We hold that the compressor gas at issue in this case, which the parties agreed was in constant motion, did not come to rest before consumption, as the statute requires. Accordingly, the trial court erred in its statutory interpretation. We reverse the judgment of the trial court and remand the case with directions that the court enter judgment in favor of MRT.

Reversed and remanded.