The Honorable Bob Johnson State Senator P.O. Box 130 Morrilton, AR 72110
Dear Senator Johnson:
I am writing in response to your request for my opinion on various questions you have submitted on behalf of Fairfield City Attorney John Shamburger. You have reported the following background facts:
 [T]he City of Fairfield Bay is proposing to construct a trunk line sewer extension. In order to obtain construction funds, the city needs short term financing to go with an available grant. Amendment 78 to the Arkansas Constitution and ACA 14-78-101 et seq. seems to provide for such short term financing.
 The lender has requested a pledge of City General Revenues as collateral for a five (5) year note. The aggregate amount of the note ($100,000.00) will not be in excess of the limits set out in Section 2(a)(2) of Amendment 78.
 Amendment 78 which is self executing and ACA 14-78-109 and 110 both provide that they are supplemental to and in addition to other means of financing. Neither has a provision repealing prior and inconsistent laws.
 The City Attorney of Fairfield Bay is concerned whether Amendments [sic] 78 and ACA 14-78-101 et seq. repeal by implication all prior legislative acts and Court decisions relating to:
1. Accounting Laws 14-59-101 et seq.
2. Fiscal Affairs of Municipalities 14-58-101 through 14-58-605
3. Public Finance Generally 14-71-101 through 14-77-101 et seq.
 4. All prior Court decisions limiting and prohibiting Municipalities (without a vote of electors) from budgeting and appropriations beyond the current fiscal year.
Mr. Shamburger has further provided me with a preliminary draft of an ordinance, which contemplates financing the sewer improvements in accordance with the provisions of Ark. Const. amend. 78. He has further provided me with two legal memoranda he directed to the mayor of Fairfield Bay.
Against this backdrop, you have posed the following questions:
 1. Can the City, without a vote of the electorate, execute a valid note now to commit payment of funds from future general revenues to pay future annual payments on a note?
 2. What collateral — beyond a mortgage on the sewer extension line or a pledge of the future revenue stream generated by the extension — can a city provide to the lender?
 3. Does the "cold comfort" provisions [sic] of ACA 14-78-108 afford the protection for the Mayor, Recorder/Treasurer and City Council from liability for violating other accounting, budgeting and fiscal responsibility laws?
 4. Does [sic] Amendment 78 and ACA 14-78-101 et seq. repeal by implication all other inconsistent laws?
5. Amendment 78 section 2(a)(2) in pertinent part provides:
 ". . . total annual . . . payments . . . shall be charged against and paid from the general revenues for such fiscal year."
 Can Amendment 78 and ACA 14-78-101 et seq. be construed so as to add or include the word "available" when it refers to general revenue of the city, so that it would operate in much the same fashion authorized by ACA 14-73-101 et seq.?
RESPONSE
Assuming the proceeds of the note are devoted to a legitimate public purpose and subject to certain conditions set forth in Ark. Const. amend.78, I believe the answer to your first question is "yes." With respect to your second question, I believe a municipality borrowing money pursuant to Amendment 78 in order to construct a sewer extension may pledge as collateral the improvement itself, the income stream arising from rates and tap-on assessments and, in all likelihood, any other previously unpledged collateral. With respect to your third question, A.C.A. §14-78-108 provides qualified immunity for municipal officials for conduct taken without "corrupt intent" in connection with an Amendment 78 loan. I am not prepared to opine that this necessarily amounts to immunity from liability for all "other accounting, budgeting and fiscal responsibility laws." I believe the answer to your fourth question is "yes." Finally, I believe the answer to your fifth question is "no."
Question 1: Can the City, without a vote of the electorate, execute avalid note now to commit payment of funds from future general revenues topay future annual payments on a note?
I believe the answer to this question is "yes," so long as the term of the note does not exceed five years and the general revenues available in any given fiscal year are pledged only to discharge obligations that have matured in that year.
I am attaching for your information a copy of Ark. Op. Att'y Gen. No.2001-156, in which my predecessor analyzed in detail the various ways in which a municipality might finance capital improvements. Although your question relates to the application of Ark. Const. amend. 78, as noted in my predecessor's opinion, the question of municipal borrowing implicates several other provisions of the Arkansas Constitution, including Ark. Const. art. 12, § 4, which provides in pertinent part:
 No municipal corporation shall be authorized to pass any law contrary to the general laws of the state; . . . nor shall any mayor, city clerk or recorder, or any other officer or officers, however designated, of any city of the first or second class or incorporated town sign or issue scrip, warrant or other certificate of indebtedness of [sic] excess of the revenue from all sources for the current fiscal year.
Section 5 of Article 12 further forbids any municipal corporation to "loan its credit to, any corporation, association, institution or individual." Section 1 of Article 16 further provides:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.
These provisions are qualified by several constitutional amendments. Amendment 62 authorizes the legislative body of any municipality," with the consent of a majority of the qualified electors voting on the question at an election called for that purpose," to authorize the issuance of interest-bearing bonds to finance municipal improvements. Amendment 65 further provides for the issuance without voter approval of revenue bonds to be retired using various non-tax sources of revenue.[1]
The constitutional provision that gave rise to your question is Ark. Const. amend. 78, which provides in pertinent part:
 Section 2(a) For the purpose of acquiring, constructing, installing or renting real property or tangible personal property having an expected useful life of more than one (1) year, municipalities and counties may incur short-term financing obligations maturing over a period of, or having a term not to exceed[,] five (5) years.
Subsection 2(a)(2) of the amendment provides in pertinent part:
 The total annual principal and interest payments in each fiscal year on all outstanding obligations of a municipality or a county pursuant to this section shall be charged against and paid from the general revenues for such fiscal year, which may include road fund revenues.[2]
Although Amendment 78 is self-executing, the legislature has made various provisions for its implementation in the Local Government Short-Term Financing Obligations Act of 2001, which is codified at A.C.A. §14-78-101 et seq. (Supp. 2001).
Insofar as Amendment 78 does not require that the financing be by revenue instrument, it broadens the constitutionally permissible range of financing options for making public improvements. In my opinion, Amendment 78 clearly authorizes a municipality to secure a 5-year note for such improvements with a pledge of its general credit. Indeed, I believe subsection 2(a)(2) of the amendment, in mandating that principal and interest owed in any given year be paid with that year's general revenue, is in effect requiring that the municipality pledge its credit as a condition of issuing the instrument. See also A.C.A. §14-78-103(d)(1). Amendment 78 is unequivocal in declaring that "all outstanding obligations" incurred pursuant to its terms — a category that would include all obligations that matured during the current fiscal year — must be paid from the current fiscal year's revenues.
Finally, I should note that the foregoing analysis is based on an assumption that the City of Fairfield Bay will own the improvements at issue. However, I am not entirely secure in that assumption, given that there is at least a suggestion in the materials Mr. Shamburger has provided me that the Fairfield Bay Community Club claims ownership of the sewer system. Without addressing the factual question of which entity might have an ownership interest in the extension, I will opine that for the city to take out a loan to improve privately owned property would in all likelihood offend Ark. Const. arts. 12, § 5 and 16, § 1. I will further opine that section 2 of Amendment 78 authorizes short-term financing only for the purpose of acquiring or improving property owned by the municipality or county.
Question 2: What collateral — beyond a mortgage on the sewer extensionline or a pledge of the future revenue stream generated by the extension— can a city provide to the lender?
Section 14-78-105 of the Code expressly authorizes a governing body by ordinance or short-term financing agreement to mortgage the property financed as security for a loan obtained pursuant to Amendment 78. Although the Code contains no further express authorizations to pledge collateral to secure a loan issued pursuant to Amendment 78, it likewise contains no proscription against pledging additional collateral. Subsection 14-78-103(a)(5) somewhat cryptically authorizes municipalities and counties to issue ordinances setting forth "provisions with respect to the obligations." Subsection (b) of this statute further provides in pertinent part:
The obligation may:
 (6) Contain other terms, covenants, and conditions as the ordinance or short-term financing agreement may provide, including, without limitation:
(A) Terms pertaining to custody and application of proceeds;
(B) Remedies on default;
 (C) The rights, duties and obligations of the officers and legislative body of the issuer and the trustee, if any; and
(D) The rights of the owners of the obligations.
In my opinion, although the statutory grant of authority might be more clearly stated, these provisions would in all likelihood authorize pledging as collateral "the future revenue stream generated by the extension"[3] — a stream that would presumably comprise rates charged users and the tap-on charge authorized at A.C.A. § 14-235-305. It would appear that any other form of collateral would be a matter for the parties to negotiate, subject, of course, to the condition that the city could not pledge monies already pledged to another purpose, see A.C.A. §§14-58-203(b)(1) and (2), or attempt to diminish a prior creditor's security interest.
Question 3: Does the "cold comfort" provisions [sic] of ACA 14-78-108afford the protection for the Mayor, Recorder/Treasurer and City Councilfrom liability for violating other accounting, budgeting and fiscalresponsibility laws?
Section 14-78-108 of the Code provides:
 No officer, employee, or member of the legislative body of the issuer shall be personally liable for any obligations issued under the provisions of this chapter or for any damages sustained by any person in connection with any contracts entered into to carry out the purposes and intent of this chapter, unless the person acted with corrupt intent.
As previously noted, the referenced chapter is the section of the Code implementing the provisions of Amendment 78.
As the Arkansas Supreme Court reaffirmed in Mississippi RiverTransmission Corp. v. Weiss, 347 Ark. 543, 550, 65 S.W.3d 867 (2002):
 The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Raley v. Wagner, 346 Ark. 234, 57 S.W.3d 683 (2001); Dunklin v. Ramsay, 328 Ark. 263, 944 S.W.2d 76 (1997).
In my opinion, unless municipal officials manifest "corrupt intent," the above recited statute unambiguously immunizes them (1) from personal liability for the debt incurred and (2) from any damage claim brought by any individual arising from any contract "entered into to carry out the purposes and intent" of Amendment 78. Although I consider this qualified immunity as affording a great deal more than "cold comfort," I am not prepared to opine that it entails immunity from any and all "other accounting, budgeting and fiscal responsibility laws." For me to respond meaningfully, you would need to be more specific in your question regarding which laws are at issue.
Question 4: Does [sic] Amendment 78 and ACA 14-78-101 et seq. repeal byimplication all other inconsistent laws?
As a general proposition, a newly enacted constitutional amendment will repeal by implication any and all inconsistent statutory or constitutional provisions, and a newly enacted statute, so long as it does not offend the constitution, will repeal any and all inconsistent statutes. However, as the court noted in Moore v. McCuen, 317 Ark. 105,108, 876 S.W.2d 237 (1994):
 "A basic and fundamental rule applicable in consideration of the effect of both statutes and constitutional amendments is that repeal by implication is not looked upon with favor and is never allowed by the courts except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together."
(Quoting McKenzie v. Burris, 255 Ark. 330, 341-42, 500 S.W.2d 357
(1973)). Determining when a repeal by implication has occurred can only be done by closely comparing specific statutes and/or constitutional provisions. I am consequently unable to opine regarding the effects Amendment 78 and A.C.A. § 14-78-101 et seq. might have on the general statutory schemes itemized in your statement of background facts.
Question 5: Can Amendment 78 and ACA 14-78-101 et seq. be construed so asto add or include the word "available" when it refers to general revenueof the city, so that it would operate in much the same fashion authorizedby ACA 14-73-101 et seq.?
The referenced Arkansas Code sections, A.C.A. § 14-73-101 et seq.,
authorize the establishing by a local governments of a reserve fund to finance improvements under the management of an independent trustee. Although the statutes at no point refer to "available" general revenue, they do invest the local government with discretion regarding how much to invest in the fund, A.C.A. § 14-73-104, thus potentially restricting the amounts "available" to fulfill the purposes set forth in the trust agreement.
I see no relationship between the laws authorizing local government reserve funds and the law as set forth in Amendment 78 and A.C.A. §14-78-101 et seq. Both subsection 2(a)(2) of Amendment 78 and A.C.A. §14-78-103(d)(1) are absolutely straightforward in mandating that principal and interest obligations arising in each fiscal year be paid from general revenues for that fiscal year. These constitutional and statutory provisions clearly anticipate that "general revenues" in any given year will be sufficient to service that year's debt obligations. If they are not, the municipality will presumably be in default, unless, of course, the debt instrument specifies otherwise.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosure
[1] In Harris v. City of Little Rock, 344 Ark. 95, 100-01,40 S.W.3d 214 (2001), the court summarized the substance of Amendment 65 as follows:
 It is clear from the plain language of Amendment 65 . . . that revenue bonds may be repaid with rents, user fees, charges, or other revenues, other than tax revenues, derived from three sources: (1) the project or improvement financed by the bonds; (2) the operations of any governmental unit; or (3) any other special fund or source other than assessments for local improvement and taxes.
[2] Subsection 2(c) of the amendment provides that "[t]he provisions of this section shall be self-executing." Section 3 further provides that the amendment authorizes that the described means of incurring interest-bearing debt is "in addition" to those specified elsewhere in the constitution and statutory law. In authorizing municipalities to incur interest-bearing debt, Amendment 78, like Amendment 65, supersedes A.C.A. §§ 14-58-401 and 14-58-403(a), which authorize only cities of the first class to issue evidences of indebtedness, and only then on a non-interest-bearing basis.
[3] I should acknowledge in passing that A.C.A. § 14-235-215, which predated the adoption of Amendment 78, authorizes the issuance of revenue promissory notes, with a term not to exceed five years, to finance municipal sewer improvements. By contrast, as noted in A.C.A. §14-78-103(d)(2), the obligations authorized by Amendment 78 "shall not be deemed to be revenue bonds for purposes of any statute."