AMERICAN TELEVISION COMPANY, Inc. *v.*
A. B. HERVEY, Jr., Commissioner of Revenues
for the State of Arkansas

5-6119                                    490 S.W. 2d 796

Opinion delivered February 19, 1973
[Rehearing denied March 19, 1973.]

*Bethell, Callaway & Robertson,* for appellant.

*R. Davis Lewis,* for appellee.

*Amicus Curiae,* Leake TV Inc.

CARLETON HARRIS, Chief Justice. Appellant, American Television Company, Inc., owns and operates KFSA-TV, a federally licensed television station in Fort Smith. The station enters into various license agreements with out-of-state concerns whereby it acquires the right to broadcast particular motion picture films, syndicated programs, and other artistic performances. The films covered in the agreements are then sent to KFSA from where the films are broadcast. After broadcasting as permitted under the license agreements, the films are returned to the sender. Appellee, the Commissioner of Revenues for the State of Arkansas, levied a use tax on the use by Appellant of the video tape material pursuant to Act 487 of 1949 [Ark. Stat. Ann. § 84-3101, et seq. (Repl. 1960)]. Appellant paid the tax under protest and thereafter instituted suit in the Pulaski County Chancery Court contending that the tax was illegal, and praying that it recover from the commissioner the amount previously paid in, together with 6% interest from December 29, 1970. The cause was submitted on the pleadings and a complete stipulation of facts and the court found against appellant and dismissed its complaint. From the decree so entered, appellant brings this appeal. For reversal, three points are asserted which we proceed to discuss in the order listed.

I

## THERE IS NO PURCHASE OF TANGIBLE PERSONAL PROPERTY

A number of exhibits were attached to the stipulation, these exhibits being various agreements with out-of-state companies allowing certain broadcasting rights to the station. The provisions of the several exhibits are quite similar, though not identical. For instance, Exhibit B is with Bing Crosby Productions, Inc. of Chicago, in the form of a license, and provides *inter alia* "that the licensor [Crosby] has hereby leased and licensed under copyright

to the licensee for broadcasting for television purposes and for broadcasting for such purposes, only the tape hereinafter designated". The tape designated is "Paul Harvey Comments" and the agreement covers 260 programs of five minute length, providing that programming will commence on September 15, 1969 at a cost of $20.00 per program. The contract also provides that the agreement will be continued for 52 consecutive weeks from the date of the first telecast. Further, *inter alia*, the agreement provides that the tapes leased shall be televised only in accordance with the schedule; that the station will not permit the exhibition of any print at any other time or place, nor for exhibition in places of public assembly where an admission fee is charged the public; that the station will return promptly each print received to the Crosby office, or as otherwise directed, immediately after the televising of such print, in the same condition as when received, reasonable wear and tear excepted.

Exhibit C is an agreement between the station and Twentieth Century Fox Television of New York and lists two motion pictures for showing for which the company will pay a total "license fee" of $600.00.

As previously stated, the agreements with various companies are very similar. Each provides a limited right to broadcast certain programming material; all provide for one or two broadcasts for gratuitous reception only; all require return of film or tape containing the material to the licensor within twenty-four to seventy-two hours of the time of the broadcast. Appellant specifically mentions that the agreement with United Artists provides that the license fee specified constitutes payment solely for the station's right to broadcast the pictures.

The statute imposing the tax reads as follows:

"84-3105. (a) There is hereby levied and there shall be collected from every person in this State a tax or excise for the privilege of storing, using or consuming, within [the State, any article of tangible personal property, after] the passage and approval of this Act [§§ 84-3101—84-3128], purchased for storage, use or consumption in this State at the rate of three per centum (3%) of the sales price of such property. This

tax will not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this State until the transportation of such article has finally come to rest within this State or until such article has become commingled with the general mass of property of this State. This tax shall apply to the use, storage or consumption of every article of tangible personal property, except as hereinafter provided, irrespective of whether the article or similar articles are manufactured within the State of Arkansas or are available for purchase within the State of Arkansas, and irrespective of any other condition."

Definitions of words pertinent to this litigation are found in Ark. Stat. Ann. § 84-3104, as follows:

"(b) The term "storage" means and includes any keeping or retention in this State of tangible personal property purchased from a vendor for any purpose, except sale or subsequent use solely outside this State.

(c) The term 'use' means and includes the exercise of any right or power over tangible personal property incident to the ownership or control of that property, except that it shall not include the sale of that property in the regular course of business.

* * * * *

(e) The term 'purchase' means the sale of tangible personal property by a 'vendor' to a person for the purpose of storage, use or consumption in this State.

(f) The term 'sale' means transfer, barter or exchange of the title or ownership of tangible personal property; or the right to use, store or consume the same, for a consideration paid or to be paid, in installments or otherwise, and includes any transaction whether called leases, rentals, bailments, loans, conditional sales, or otherwise, and notwithstanding that the title or possession of said property, or both, is retained for security. For the purpose of this Act [§§ 84-3101— 84-3128] the place of delivery of tangible personal

property to the purchaser, user, storer or consumer shall be deemed to be the place of sale, whether such delivery be by the vendor or by common carriers, private contractors, mails, express, agents, salesmen, solicitors, hawkers, representatives, consignees, peddlers, canvassers, or otherwise."

Succinctly stated, appellant contends that the tax is only imposed on tangible personal property which it says is not here involved; that the purchase by KFSA is a limited, exclusive license to reproduce the performances of personalities and artists by broadcasting on the station, and that this license, or *right to broadcast,* is intangible. Appellant says that the film or video tape furnished it is only sent in order that the right mentioned may be exercised, and that the fact that the performance is imprinted on the film or tape does not change the character of the transaction. Appellant constantly refers to these agreements as licenses while the commissioner refers to them as leases, but whatever the name applied, there is no dispute but that companies outside this state agree that certain tapes or films are to be sent to appellant within this state, and it is undisputed that the film is loaded on a projector or the video tape on a video tape machine, run through the machine and the program broadcast from Fort Smith. Appellee asserts that when the television station takes possession in Arkansas, loads the film or tape into a projector and activates the machine so as to broadcast images over the state, it has used that tangible personal property so as to make that use taxable under our statute. Important is the definition of sale which, as previously noted, is defined as any transfer of the title or ownership, or the right to use, store or consume the same . . . and includes any transaction whether called leases, rentals, bailments, loans, etc.

Of course, there was no purchase or sale, as we normally use the word, but here we are dealing with a statutory definition. We agree with the state that the right to use property cannot be separated from the property itself and the "right" spoken of by appellant would have no value except for the use of the tape or film—the two cannot be separated.

An *Amicus Curiae* Brief has been filed by counsel for Leake TV, Inc. In that brief, it is pointed out that Arkansas has had a sales tax since 1935 and the present 3% levy was imposed in 1941. This 1941 Act (Ark. Stat. Ann. § 84-1902 (Repl. 1960)) defines sale as follows:

> "The term 'sale' is hereby declared to mean the transfer of either the title or possession for a valuable consideration of tangible personal property, regardless of the manner, method, instrumentality, or device by which such transfer is accomplished. The term 'sale' is also declared to include the exchange, barter, lease or rental of tangible personal property where such exchange, barter, lease or rental results or may result in either the transfer of the title or the possession."

In 1943, this court in the case of *U-Drive-'Em Service Co., Inc.* v. *Hardin, Commissioner of Revenues*, 205 Ark. 501, 169 S.W. 2d 584, construed this statute and stated:

> "We think both the commissioner and the trial court fell into error in so holding and in so applying this provision of the statute to the facts in this case. A lease or rental of tangible personal property is not taxable under the express provision of the act, unless the result is or may be either the transfer of the title to such property or the transfer of the possession of such property. Now, it is undisputed that appellant, under its agreement with its customers does not transfer the title to its cars to them, even temporarily, and it is not here contended that it does, but only that there is a transfer of the 'possession.' So, it narrows down to the proposition of whether the arrangement of appellant with its customers amounts to a 'transfer of the . . . possession,' within the meaning of the act. We do not think so. Appellant never parts with the whole possession of its cars by this arrangement. It is always the owner and is in either the actual or the constructive possession of them."

The court then additionally commented that there was no sale, only a rental, but the thrust of the opinion was directed to the word "possession".

Counsel state that it is a well known fact that the purpose of a use tax is to treat equally taxwise the purchase of articles within the state and the purchase without the state for use within this state, and that the purpose is to avoid discrimination; that in 1949, the Arkansas General Assembly passed the "use tax"; that the General Assembly was expressly aware of the provisions of the sales tax, and it is presumed to have also been aware of the construction of the sales tax act by this court in *U-Drive-'Em Service Co., Inc.* v. *Hardin, Commissioner of Revenues, supra.* Accordingly, says counsel, in view of the intentionally complementary nature of the acts, the only logical conclusion is that bona fide rentals were not intended to be covered by the use tax act for we held that such rentals were not covered by the sales tax act.

We do not agree with this argument. At the time of *U-Drive-'Em,* there was no use tax act, and consequently, the court could not have been taking that act into consideration in its determination. As previously pointed out, this act was not passed until six years after our decision and actually, there is a difference in the wording of this last act, and the language that was construed.

In comparing the 1941 sales tax act with the use tax act, it will be at once noted that there is a distinct difference in the definitions. In the sales tax act, before the transaction constituted a sale, there had to be a transfer of either the title or possession, while the use tax act makes no such requirement. In fact, *U-Drive-'Em* deals with the word "possession" as the key word, and it would appear that the General Assembly perhaps deliberately circumvented the holding of the court by providing that possession by the person to be taxed is not necessary, and that the transfer of the *right-to-use* is sufficient to constitute a sale.

In 1965, the General Assembly amended the definition of "sale" in the sales tax law, this definition appearing as Ark. Stat. § 84-1902 (c) (Repl. 1960 and Supp. 1971), declaring "the term 'sale' is hereby declared to mean the transfer of either the title or possession, *except in the case of leases or rentals* (our emphasis) for a valuable consideration of tangible personal property, regardless of the

manner, method, instrumentality, or device by which such transfer is accomplished. The term 'sale' is also declared to include the exchange, barter, lease or rental of tangible personal property. In the case of leases or rentals of tangible personal property, the tax shall be paid on the basis of rental or lease payments made to the lessor of such tangible personal property during the term of the lease or rental."

The *Amicus* Brief admits that it may well be that the 1965 amendment to the sales tax law made leases and rentals subject to the *sales tax*, thus nullifying the *U-Drive-'Em* decision, but that the words used in the use tax law must be construed under the holding in *U-Drive-'Em*. In its brief, *Amicus* counsel state:

"The use tax law not having been amended, as was the sales tax law in 1965, its construction and application is unchanged by that amendment and its scope is no broader than if the 1965 sales tax amendment had never been enacted."

It is obvious we do not agree with this argument since we have already pointed out that there is a difference in the definition of sale in the use tax act and the 1941 sales tax act. No need exists for the General Assembly to enact additional legislation for the two acts now complement each other.

We like the reasoning of the Florida court (District Court of Appeal, First District) in the case of *Florida Association of Broadcasters, et al* v. *Claude R. Kirk, Jr., et al, as and constituting the State Revenue Commission,* 264 So. 2d 437, where the same argument was presented. There, appellants sought review of a declaratory judgment concerning their liability for sales and use taxes arising out of their use of films and transcriptions during the year 1969. The trial court found appellants liable for the payment of taxes, and on appeal this holding was affirmed, the court stating:

"Appellants attempt to distinguish between money paid for the actual physical film and that paid for the right to use the film. The right to use is a license

so appellants contend that they are renting intangible personal property rather than tangible personal property. However, as the trial court pointed out, this reasoning is unsound. Every purchase or rental of property is the acquisition of the right to use that property for its intended purposes. Likewise, practically every piece of property subject to rent or sale is a product of someone's original idea and the rental thereof is for the purpose of using it.

The Supreme Court of Tennessee, when confronted with the issue of whether operators of motion picture theaters were liable for sales tax on film rented from producers, stated:

'There is scarcely to be found any article susceptible to sale or rent that is not the result of an idea, genius, skill and labor applied to a physical substance. . . If these elements should be separated from the finished product and the sales tax applied only to the cost of the raw material, the sales tax would, for all practical purposes, be entirely destroyed.' *Crescent Amusement Co.* v. *Carson*, 187 Tenn. 112, 213 S.W. 2d 27, 29 (1948).

Also, in *United Artists Corp.* v. *Taylor*, 273 N.Y. 334, 7 N.E. 2d 254 (1937), the New York court held that a transfer by a distributor to an exhibitor of possession of motion picture film with a license to use or exhibit that film constituted a sale within the meaning of the sales tax law. The court in that case stated that 'The license to exhibit without the transfer of possession would be valueless. Together they are one transaction and constitute a sale. . .''

It follows from what has been said that we find no merit in this point.

## II

### THE IMPOSITION OF A TAX ON APPELLANT'S RIGHT TO BROADCAST THE PERFORMANCES IS PROHIBITED BY THE CONSTITUTION OF THE UNITED STATES

Appellant points out that the broadcast signal of its station which emanates from its transmitting tower near Fort Smith extends into a large portion of the State of Oklahoma and a small portion of the State of Missouri and, in fact 32% of the television homes in its market are located in Oklahoma. Appellant argues that to the extent that television broadcasting involves interstate commerce, it may not be burdened by state privilege taxes for if the levy is directly on commerce, it is prohibited. We agree with this statement, but do not agree that it is applicable here. In *McLeod, Commissioner of Revenues* v. *Memphis Natural Gas Company,* 207 Ark. 879, 183 S.W. 2d 927, the appellee insisted that its net income in Arkansas was derived wholly from interstate commerce and that if the Arkansas income tax act was construed to apply to its income, said act was unconstitutional as being in violation of the commerce, due process, and equal protection clauses of the United States Constitution. This court, in disagreeing with this argument, and reversing the trial court, quoted from *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U.S. 33, 60 S. Ct. 388, as follows:

"In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or within foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. (Citing cases). Forms of state taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared or in competition with intrastate commerce, and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional manner, because of its obvious regulatory effect upon commerce between the states.

'But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business. (Citing cases). Not all state taxation is to be condemned

because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce, which the Constitution leaves to Congress.'

See also *State* v. *Tad Screen Advertising Co.,* 199 Ark. 205, 133 S.W. 2d 1 and *Lee Enterprises, Inc.* v. *Iowa State Tax Commission,* 162 N.W. 2d 730, where the Iowa Supreme Court held likewise in dealing with a sales and use tax on advertising receipts from radio and television stations which disseminated their programs across state lines. We hold the contention to be without merit.

## III

## THE "PROPERTY" DOES NOT COME FINALLY TO REST IN THIS STATE

Finally, it is argued that, assuming it is tangible personal property involved in the transactions, such property does not finally come to rest in this state for even before a film or tape enters Arkansas, it is already definitely scheduled (under the agreement) to leave the state within twenty-four to seventy-two hours after the broadcast. This argument, to which only one page is devoted, has reference to that language of Ark. Stat. Ann. § 84-3105, which states that no tax shall apply "until the transportation of such article has finally come to rest within this state. . ." In our view, appellant gives a much broader interpretation to the word "finally" than is warranted under the facts of this case. The tapes, films, etc. have finally come to rest as far as the purpose in sending them here is concerned; that is, they have "come to rest" for the use intended. As already pointed out, rentals and leases are unquestionably covered under the statute; yet we know that the very nature of a lease or rental means that whatever property is rented or leased will eventually be returned to the actual owner (except in the case of lease-purchase agreements). For that matter, under the method of operation, it might be difficult to say that the tapes or films ever "finally" (as appellant uses the word) come to rest, for they are apparently shipped to other points after they are returned to the owner. Be that

as it may, the fact remains that the tapes and films, upon reaching station KFSA-TV, have finally come to rest for the purpose for which they were sent, i.e., the use of said film by that station in its broadcasting programs.

It follows from what has been said that we find no error in the court's decree (judgment) and said decree is, in all respects, affirmed.

It is so ordered.