2010 Ark. 94

**ALCOA WORLD ALUMINA,
L.L.C., Appellant,**

v.

**Richard WEISS, Director, Department
of Finance and Administration,
Appellee.**

No. 09–688.

Supreme Court of Arkansas.

Feb. 25, 2010.

Emmett Bowers Chiles, Kristine Gerhard Baker, James Saxton, Little Rock, AR, Quentin Sigel, Austin, TX, Michael W. McLoughlin, New York, NY, for appellant.

Elizabeth Ashley Fisher, Little Rock, AR, for appellee.

RONALD L. SHEFFIELD, Justice.

Appellant Alcoa World Alumina, LLC, appeals from an order entered by the Pulaski County Circuit Court on April 3, 2009, denying Appellant's request for a refund of use taxes it paid for purchases of natural gas. The appellee is Richard A. Weiss, in his official capacity as the Director of the Arkansas Department of Finance and Administration (DFA). Appellant maintains that the natural gas it purchased from sellers outside Arkansas is not subject to taxation since it did not "finally come to rest" before consumption in Appellant's manufacturing facility, pursuant to Ark.Code Ann. § 26–53–106(b) and our holding in *Mississippi River Transmission Corp. v. Weiss*, 347 Ark. 543, 65 S.W.3d 867 (2002). Appellant also argues that the circuit court erred in failing to find that the gas was in constant motion up until the point of its combustion in Appellant's facility.

Appellant purchased natural gas from sellers outside of Arkansas between October 1, 2000, and February 28, 2004, for use at Appellant's plant in Bauxite, Arkansas. The gas was bought pursuant to Transportation Service Agreements, and traveled through interstate pipelines directly to the internal gas lines of Appellant's plant, and from there to various sites and equipment, located within Appellant's plant, for consumption. The gas was consumed almost immediately upon receipt; Appellant never stored the gas. Movement of the gas was caused by its pressurization in compression stations along the interstate pipeline. The gas was metered as it left the interstate pipeline and entered Appellant's gas lines, at which point the Agreements deemed the gas delivered to Appellant.

The DFA imposed a use tax on this natural gas pursuant to Ark.Code. Ann. § 26–53–106 (Repl.1997). Section 26–53–106 states in relevant part:

(a) There is levied and there shall be collected from every person in this state a tax or excise for the privilege of storing, using, distributing, or consuming within this state any article of tangible personal property purchased for storage, use, distribution, or consumption in this state at the rate of three percent (3%) of the sales price of the property.

(b) This tax will not apply with respect to the storage, use, distribution, or consumption of any article of tangible personal property purchased, produced, or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article of tangible personal property has become commingled with the general mass of property of this state.[1]

The question we are presented with in this case is whether the natural gas came to rest in this state within the context of Ark.Code. Ann. § 26–53–106(b), or whether it was still within the stream of interstate commerce when it was taxed. As such, this case presents an issue of

---

1. The 2003 amendment to this statute does not affect our analysis.

statutory interpretation. We review issues of statutory interpretation *de novo,* and we are not bound by the trial court's decision. When considering the meaning and effect of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. However, when the meaning of a statute is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. In addition, when we are reviewing matters involving the levying of taxes, any and all doubts and ambiguities must be resolved in favor of the taxpayer. *Miss. River Transmission Corp. v. Weiss,* 347 Ark. 543, 65 S.W.3d 867 (2002). Further, this court will not engage in statutory interpretation that defies common sense or produces absurd results. *Dachs v. Hendrix,* 2009 Ark. 542, 354 S.W.3d 95. Finally, we will only overturn the findings of fact of the circuit court if they are clearly erroneous or clearly against the preponderance of the evidence. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *City of Little Rock v. Rhee,* 375 Ark. 491, 292 S.W.3d 292 (2009).

Appellant argues that its circumstances do not satisfy the "finally come to rest" requirement of Ark.Code. Ann. § 26–53–106 because the natural gas taxed was in continuous motion up until it was combusted in Appellant's facility. Appellant bases this argument on our reasoning in *Mississippi River Transmission Corp. v. Weiss,* 347 Ark. 543, 65 S.W.3d 867 (2002). In that case, the Mississippi River Transmission Corporation (MRT) owned gas pipelines passing through Arkansas, along which were compressor stations needed to

force the gas to move through the pipeline. In order to fuel the compressor stations, some of the natural gas was diverted from the pipeline and immediately ignited in the compressor's combustion chamber. The DFA sought to impose a use tax on this compressor gas in accordance with Ark. Code Ann. § 26–53–106. In addressing the issue of whether the compressor gas had come to rest in Arkansas, we noted that, while there were no Arkansas cases directly on point, the Tennessee Supreme Court had addressed the very same issue, and, applying their "come to rest" provision literally, held that the compressor gas had never stopped moving, and was instead a necessary and integral part of interstate commerce. *Id.* at 551, 65 S.W.3d at 873 (citing *Tex. Gas Transmission Corp. v. Benson,* 223 Tenn. 279, 444 S.W.2d 137 (1969)). The Michigan Court of Appeals had come to the same conclusion. *Id.* (citing *Mich. Wis. Pipe Line Co. v. State,* 58 Mich.App. 318, 227 N.W.2d 334 (1975)). Accordingly, we found that the Arkansas legislature "did not intend for consumption of a product to be the equivalent of its coming to rest. Rather, the statute contemplates that property must first come to rest *before* it is consumed in order for it to be taxable. Otherwise, the come-to-rest requirement would be meaningless." *Id.* at 552, 65 S.W.3d at 874. We concluded that since the compressor gas remained in constant motion until combustion, it had not come to rest and could not be taxed.

While our language in *Mississippi River* seemingly provides an answer to the issue presented to us in this case, an examination of other cases that have addressed the "come to rest" test is appropriate. The "come to rest" test has its roots in the United States Supreme Court case *Helson v. Kentucky,* 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683 (1929), as we noted in *Mississip-*

*pi River.* In that case, the Supreme Court struck down a tax on gasoline used to power a ferry that ran between Kentucky and Illinois. It found that this gasoline was a "medium by which such [interstate] transportation is effected," and therefore could not be taxed. *Id.* at 252, 49 S.Ct. 279. However, the Court also differentiated property used in interstate commerce, like the gasoline, from property having a situs within a state, which could be taxed. Several years later, the Court revisited the issue in *Henneford v. Silas Mason Co.,* 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937). Washington State sought to tax the use of construction machinery, which had been bought in a state that did not impose sales or use taxes, and had subsequently been transported into Washington. In upholding this tax, the Supreme Court noted, "a tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate." *Id.* at 583, 57 S.Ct. 524.

The "come to rest" test was adopted by the Arkansas legislature in 1949 with the passage of the Arkansas Compensation Tax Act, now codified as Ark.Code Ann. § 26–53–106(b), requiring that any tangible piece of personal property not subject to sales tax be subject to a use tax, as long as the property had come to rest within Arkansas. As we discussed in *Mississippi River,* the United States Supreme Court jurisprudence on the "come to rest" test was implicitly integrated into this Act, and continues to be dispositive. In addition, since adoption of the Act, this court has applied the "come to rest" test in a few cases. In *Pfeiffer v. State,* 226 Ark. 825, 295 S.W.2d 365 (1956), the appellant bought several cases of cigarettes in St. Louis and transported them into Arkansas. Not long after he crossed the border into Arkansas, while he was still driving on the highway, he was arrested for violating a statute that prohibited the possession of cigarettes for sale or consumption where a tax had not been paid on the cigarettes. We noted that "[i]t appears that all of the cases upholding the levy of a tax by a State, where an interstate commerce question is involved, base the constitutionality of the tax on the fact that the transported property had come to rest at a destination." *Id.* at 828, 295 S.W.2d at 368. We then found that since the appellant was arrested while still transporting the cigarettes in interstate commerce, the cigarettes had not come to rest in Arkansas and could not be taxed.

In *American Television Co., Inc. v. Hervey,* 253 Ark. 1010, 490 S.W.2d 796 (1973), the appellant television station contracted with parties outside Arkansas to broadcast films and other programs. The parties would send the tapes to the appellant, who would return them after broadcasting. Arkansas levied a tax on the use of these video tapes under Ark. Stat. Ann. § 84–3105 (Repl.1960) (now codified as Ark. Code Ann. § 26–53–106). In upholding the tax, we found that "the tapes, films, etc. have finally come to rest as far as the purpose in sending them here is concerned; that is, they have 'come to rest' for the use intended." *Id.* at 1020, 490 S.W.2d at 802. Similarly, in *Martin v. Riverside Furniture Corp.,* 292 Ark. 399, 730 S.W.2d 483 (1987), an Arkansas-based furniture manufacturer purchased advertising materials from an out-of-state company; the materials were delivered to the manufacturer's office in Arkansas for distribution to its sales representatives outside of Arkansas. As in *American Television, supra,* Arkansas levied a use tax on these materials. We found that the materials had come to rest in Arkansas, since the manufacturer had retained them in

Arkansas in order to prepare them for dispersal.

■ As is clear from the reasoning in the above cases, for purposes of the "come to rest" test, what is important is not that the property to be taxed actually stopped moving, but that its transportation in interstate commerce had ceased. Under Ark.Code Ann. § 26–53–106(b), property comes to rest in Arkansas when it reaches a point where it can satisfy the purpose—whether for use, storage, distribution or consumption—for which it was put in interstate commerce and sent to Arkansas. With this finding, we wish to clarify our holding in *Mississippi River*. In holding that the compressor gas could not be taxed because it had remained in continuous motion until combustion, we did not mean that because the gas particles had not literally ceased to move, they had not come to rest. Rather, the compressor gas had not ceased its transportation within the stream of commerce before combustion, and the act of combustion did not remove it from the stream. Indeed, the only purpose that the compressor gas ever served was as an instrument of interstate commerce. Thus, the gas never came to rest in Arkansas.

■ In the case before us now, the gas at issue was not combusted in order to facilitate interstate commerce. Yet, Appellant wishes us to find that it was not taxable because the gas was in constant motion up until the point of combustion.[2] Such a finding would be absurd and contrary to our rules of statutory interpreta-tion. Gas by its very nature never ceases moving. John C. Kotz & Paul M. Treichel, Jr., Chemistry & Chemical Reactivity (5th ed.2003). If the benchmark were only whether the property to be taxed was in constant motion, as Appellant maintains, then, by the language of Ark.Code Ann. § 26–53–106(b), Arkansas would never be able to tax natural gas. The Arkansas legislature would never have contemplated such a result. Instead, though the gas at issue continued to move through Appellant's gas lines, once it had left the interstate pipeline, it had effectively been delivered to Appellant and had left the stream of interstate commerce. As soon as the gas was metered, it came under the control of Appellant and could be used by Appellant for the purpose for which the gas was in interstate commerce at all, namely, to fuel various pieces of equipment within Appellant's facility. Thus, once the gas passed into Appellant's lines, it had "finally come to rest," and could be taxed.

Affirmed.

■

---

2. The circuit court declined to find that the gas was in constant motion, and we do not hold now that the circuit court erred in any way on this point. The circuit court found that the gas moved through the interstate pipeline, entered Appellant's internal gas lines, and then continued to move through the gas lines to locations within Appellant's plant where the gas could be combusted. This language is sufficient to describe the circumstances of this case. It is clear to us that Appellant only sought a finding that the gas was in constant motion in order to complement its argument that *Mississippi River* is directly on point.