#30280-a-MES
**2024 S.D. 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ELLINGSON DRAINAGE, INC.,                Petitioner and Appellant,

    v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE,                           Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRISTINA L. KLINGER
Judge

* * * *

ANDREW S. HURD
SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert
   & Garry, LLP
Sioux Falls, South Dakota           Attorneys for petitioner
                                 and appellant.


KIRSTEN E. JASPER
ALI J. SCHAEFBAUER
Special Assistant Attorneys General
SD Department of Revenue
Pierre, South Dakota              Attorneys for respondent and
                                 appellee.

* * * *

ARGUED
OCTOBER 5, 2023
OPINION FILED **02/07/24**

#30280

SALTER, Justice

[¶1.]      The South Dakota Department of Revenue (DOR) imposed a use tax on Ellingson Drainage, Inc. (Ellingson), after an audit revealed it had not paid use tax on equipment used in 30 South Dakota projects but purchased elsewhere. Ellingson filed an administrative appeal challenging the constitutionality of the tax, but the appeal was dismissed because the claim was deemed not cognizable in an administrative forum. Ellingson then appealed to the circuit court, which affirmed the imposition of the tax, holding it did not violate the Due Process Clause of the Fourteenth Amendment or the Interstate Commerce Clause, as applied to Ellingson. Ellingson appeals, and we affirm.

**Factual and Procedural Background**

[¶2.]      Ellingson is a Minnesota-based company with its principal place of business in Minnesota. It specializes in installing drain tile for farming and government applications throughout the United States. Between 2017 and 2020, Ellingson completed approximately 30 drain tile projects in South Dakota. In order to complete these jobs, Ellingson brought into South Dakota several pieces of construction equipment that had been purchased in other states and one piece of rented equipment.

[¶3.]      The DOR conducted a tax audit of Ellingson's operations in South Dakota from 2017 to 2020[1] and assessed a use tax of 4.5% upon the value of the equipment Ellingson used. After reducing the value for depreciation, the DOR

---

1.      The DOR's brief seems to suggest that the date range for the audit was 2016 to 2019, but the parties' stipulated facts set the range at March 2017 through January 2020.

-1-

arrived at a combined value of $1,228,120, which yielded a use tax amount of $60,665.44 and $14,862.88 in interest. And though the DOR allows a credit against South Dakota use tax based upon taxes previously paid in other states, it is undisputed that the equipment at issue in this appeal had never been subject to sales or use tax elsewhere.

[¶4.] Ellingson objected to the imposition of the tax, arguing that some of the equipment at issue was used in South Dakota only for one day. Ellingson litigated a constitutional challenge to the application of the use tax statute unsuccessfully in an administrative proceeding[2] before the DOR and later in an appeal to the circuit court, which affirmed the DOR's authority to impose the use tax upon Ellingson's equipment. The court concluded the DOR's application of the use tax statute is constitutional under the United States Constitution's Interstate Commerce Clause and the Due Process Clause of the Fourteenth Amendment.

[¶5.] Applying the four-part test we used in a previous use tax decision, the circuit court found each prong was satisfied and concluded the statute did not violate the Interstate Commerce Clause. The court also concluded there was no due process violation since Ellingson had a sufficient connection to South Dakota and the statute was rationally related to South Dakota values.

[¶6.] Ellingson appeals, raising two issues for our review, restated as follows:

---

2. The administrative claim was dismissed for lack of subject matter jurisdiction because the DOR determined that, as an administrative agency, it could not decide the constitutionality of a statute.

1.  Whether SDCL 10-46-3, as applied to Ellingson, violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution under the theory that the tax imposed on Ellingson is disproportionate to its activity in South Dakota.

2.  Whether SDCL 10-46-3, as applied to Ellingson, violates the Interstate Commerce Clause of the United States Constitution under the theory that the tax imposed on Ellingson is disproportionate to its activity in South Dakota.

### Standard of Review

[¶7.] We review a challenge to the constitutionality of a statute de novo. *Green v. Siegel, Barnett & Schutz*, 1996 S.D. 146, ¶ 7, 557 N.W.2d 396, 398 (citation omitted). We will only declare a statute unconstitutional if it "clearly, palpably and plainly" violates the Constitution. *Id.*

### Analysis and Decision

#### *Use Tax and SDCL 10-46-3*

[¶8.] The purpose of a use tax is to "serve[] as a sales tax substitute," *W. Wireless Corp. v. Dep't of Revenue*, 2003 S.D. 68, ¶ 6, 665 N.W.2d 73, 75 (citation omitted), ensuring that all property either sold or used in South Dakota is subject to a state tax. *Black Hills Truck & Trailer, Inc. v. S.D. Dep't of Revenue*, 2016 S.D. 47, ¶ 18, 881 N.W.2d 669, 674 (citation omitted). The tax rate for sales and use taxes is identical, and we have observed that the two are "mutually compensating, one supplementing the other, but both cannot be equally applicable to the same transaction." *W. Wireless Corp.*, 2003 S.D. 68, ¶ 6, 665 N.W.2d at 75.

[¶9.] "Use taxes accommodate two vital concerns: (1) the state may lose tax revenue if taxpayers purchase out-of-state goods or services for in-state use, and (2)

local providers will lose business if taxpayers purchase out-of-state goods or services to avoid sales tax liability." *Id.* ¶ 7 (citing *Northwestern Nat'l Bank of Sioux Falls v. Gillis*, 148 N.W.2d 293, 298 (S.D. 1967)). Alone, a use tax may seem discriminatory because it is only imposed on goods or services purchased out of state, but these statutes should not be regarded so narrowly. *Id.* ¶ 7, 665 N.W.2d at 76 (citing *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 69, 83 S. Ct. 1201, 1203, 10 L. Ed. 2d 202 (1963)).

[¶10.] When paired with a complementary sales tax statute and viewed in the "context of the overall tax structure," use taxes, which attach after a tangible item is used in South Dakota, properly impose a tax equivalent to that of a tax on an in-state purchase. *Id.* ¶¶ 6–7, 665 N.W.2d at 75–76 (citing *Henneford v. Silas Mason Co.*, 300 U.S. 577, 57 S. Ct. 524, 81 L. Ed. 814 (1937)); *see also* SDCL 10-46-1(17) (defining "use" as, among other things, "the exercise of right or power over tangible personal property . . . except that it does not include the sale of that property in the regular course of business").

[¶11.] The use tax statute at issue here is SDCL 10-46-3, which provides in relevant part:

> An excise tax is imposed on the privilege of the use . . . in this state of tangible personal property . . . not originally purchased for use in this state, but thereafter used, stored or consumed in this state, at the same rate of percent of the fair market value of the property at the time it is brought into this state as is imposed by § 10-45-2. The use . . . of tangible personal property . . . more than seven years old at the time it is brought into the state by the person who purchased such property for use in another state is exempt from the tax imposed herein. The secretary may promulgate rules pursuant to chapter 1-26 relating to the determination of the age and value of the tangible personal property . . . brought into this state.

[¶12.] Pursuant to this statutory authority, the DOR has promulgated ARSD 64:09:01:20, which provides a 10% reduction of the property's value for each year after the date of purchase. As the text of SDCL 10-46-3 provides, property brought into South Dakota after seven years is no longer subject to taxation.

[¶13.] Ellingson objects to the DOR's use-tax assessment and makes several individual and recurring arguments, all of which can be distilled to one overarching contention—the use tax imposed on its equipment is unfairly disproportionate to the extent of the equipment's usage in South Dakota. From this, Ellingson claims that the DOR's application of SDCL 10-46-3 violates the United States Constitution's Interstate Commerce Clause and the Due Process Clause of the Fourteenth Amendment.

### Ellingson's as-applied challenge to SDCL 10-46-3

[¶14.] The Interstate Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. And where Congress has not acted, the states are permitted to act. *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179, 115 S. Ct. 1331, 1335, 131 L. Ed. 2d 261 (1995). While we have not previously addressed a claim that SDCL 10-46-3 violates the Interstate Commerce Clause, we have considered a constitutional challenge to a different use tax statute. *See W. Wireless Corp.*, 2003 S.D. 68, 665 N.W.2d 73.

[¶15.] In *Western Wireless*, we held that the DOR may impose a use tax pursuant to SDCL 10-46-2.1 for billing statements relating to services delivered to South Dakota customers but generated by a third-party vendor for a cellular

telephone company, both of which were located out of state. *Id.* at 78. To resolve the taxpayer's claim that the imposition of a use tax was "a burden on interstate commerce[,]" we applied the four-part standard described in the United States Supreme Court's decision in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977):

> A tax is not an unconstitutional burden on interstate commerce if the taxed activity [1] is sufficiently connected to the state to justify the tax, [2] the tax is fairly related to benefits provided to the taxpayer, [3] the tax does not discriminate against interstate commerce, and [4] the tax is fairly apportioned.

*W. Wireless Corp.*, 2003 S.D. 68, ¶ 15, 665 N.W.2d at 78 (citing *Complete Auto Transit, Inc.*, 430 U.S. 274, 287, 97 S. Ct. 1076, 1083); *see also Montana-Dakota Utils. Co. v. S.D. Dep't of Revenue*, 337 N.W.2d 818, 820 (S.D. 1983).

[¶16.]     For a separate claim that a tax violated the Due Process Clause of the Fourteenth Amendment, we consider "whether the tax has relation to opportunities, benefits, or protection afforded by the taxing state." *Montana-Dakota Utils. Co.*, 337 N.W.2d at 820. The Supreme Court has explained that "[t]he Due Process Clause requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax[.]" *Quill Corp. v. N.D. ex rel. Heitkamp*, 504 U.S. 298, 306, 112 S. Ct. 1904, 1909–10, 119 L. Ed. 2d 91 (1992), *overruled by South Dakota v. Wayfair*, 585 U.S. ___, 138 S. Ct. 2080, 201 L. Ed. 2d 403 (2018) (eliminating the physical presence requirement previously needed to establish a sufficient connection).

[¶17.]     But despite similar phrasing, the "sufficient connection" requirement of the *Complete Auto* test necessitates a greater link than the "minimum

connection" requirement of the Due Process Clause. *Id.* at 312–13, 112 S. Ct. at 1913–14. Therefore, the Supreme Court has held that the *Complete Auto* test "encompasses due process standards," *Amerada Hess Corp. v. Dir., Div. of Tax'n, N.J. Dep't of Treasury*, 490 U.S. 66, 79, 109 S. Ct. 1617, 1625, 104 L. Ed. 2d 58 (1989), and accordingly, that is where we begin our review.

[¶18.]     Ellingson makes no argument that SDCL 10-46-3 is unconstitutional under prongs one or three of the *Complete Auto* test. As to prong one, it recognized before the circuit court that it had a sufficient connection to South Dakota because it does business in the state. And as to prong three, Ellingson does not argue that the statute discriminates against interstate commerce by favoring local business over foreign business, nor is there any indication that this is at issue. We agree that prongs one and three are satisfied.

[¶19.]     Although prong two requires a tax to be fairly related to the benefits provided to the taxpayer, the only benefit a taxpayer is entitled to is that "of living in an organized society[.]" *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 623, 101 S. Ct. 2946, 2956, 69 L. Ed. 2d 884 (1981). A tax is simply "a means of distributing the burden of the cost of government," not "an assessment of benefits." *Id.* at 622–23, 101 S. Ct. at 2956 (citation omitted). In fact, "[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure[.]" *Id.* at 622, 101 S. Ct. at 2956.

[¶20.]     Ellingson points to its one-day use of certain equipment in South Dakota to suggest that the tax is not fairly related to any benefit it has experienced; it did not, in other words, receive commensurate value for the tax it paid. But while

working in South Dakota, Ellingson enjoyed the same benefits as any other person or business present in the state. And having paid the use tax on its equipment that had otherwise not been subject to sales or use tax in another state, Ellingson was and is free to bring the equipment back to work on jobs in South Dakota where Ellingson will continue to enjoy the privilege of conducting its business without being subject to additional use tax.

[¶21.] Indeed, the bad-bargain argument that permeates Ellingson's submissions rests on the incorrect factual premise that the tax imposed by the DOR was *limited* to one day of use. It was, of course, not so restricted, and the circumstances underlying Ellingson's as-applied challenge to SDCL 10-46-3 have very little to do with the DOR's application of the statute and relate much more to Ellingson's unilateral decision as to the length of time it would use certain equipment for its South Dakota drain tile projects—something over which the DOR had no control. Because Ellingson has received all the benefits it is entitled to, prong two is satisfied.

[¶22.] Prong four of the *Complete Auto* test requires a tax to be fairly apportioned, which necessitates both internal and external consistency. *Goldberg v. Sweet*, 488 U.S. 252, 261, 109 S. Ct. 582, 589, 102 L. Ed. 2d 607 (1989), *abrogated by Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 135 S. Ct. 1787, 191 L. Ed. 2d 813 (2015) (abrogated on other grounds). A tax is internally consistent if, theoretically, every state has identical use tax statutes and multiple taxation does not result. *Id.*

[¶23.]    Ellingson concedes that SDCL 10-46-3 is internally consistent because the presence of SDCL 10-46-6.1 contemplates a credit for taxes paid in another state on the same piece of property. And if we are to imagine that every state has the same taxation scheme, then there is no question of double taxation, and we agree that the use tax contained in SDCL 10-46-3 is internally consistent.

[¶24.]    "The external consistency test asks whether the State has taxed only that portion . . . [resulting] from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg*, 488 U.S. at 262, 109 S. Ct. at 589. We must, therefore, "examine the in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate activity." *Id.* Ellingson argues that the statute is not externally consistent, asserting that the tax is unreasonable in light of the fact that 90% of its activities occurred outside of South Dakota. Ellingson contends that taxing the full value of its property, reduced only for depreciation, "fails to appropriately allocate the tax relative to Ellingson's in-state activities."

[¶25.]    However, the activity at issue here is simply an in-state use of equipment that was purchased outside the state without ever having paid sales taxes on the property. This is reasonable, and when the use tax is viewed in the context of what it truly is—a substituted sales tax designed to preclude the loss of revenue by the State or local businesses that might otherwise result without the collection of such taxes—Ellingson's argument is wide of the mark.[3] *See Jefferson*

---

3.    This case differs from cases in which a state attempts to impose a tax upon an activity which occurs, in part, outside of its state. *See Cent. Greyhound*

(continued . . .)

*Lines, Inc.*, 514 U.S. at 186–87, 115 S. Ct. at 1339 (stating that the taxation of sales has consistently been approved "without any division of the tax base among different States" and is instead measured "by the gross charge for the purchase, regardless of any activity outside the taxing jurisdiction that might have preceded the sale or might occur in the future").

[¶26.]        In Ellingson's concept of external consistency, SDCL 10-46-3 should be read to apply only to tangible personal property that "has come to rest [in South Dakota] and has become part of the common mass of property therein." For this proposition, Ellingson cites to *Henneford v. Silas Mason Company*, a case in which the Supreme Court noted that certain property was "at rest" and not "in transit" or within "the operations of interstate commerce[.]" 300 U.S. at 582–83, 57 S. Ct. at 524, 527.

[¶27.]        Ellingson supplements its "at rest" theory with an argument that we should overlook textual distinctions and view SDCL 10-46-3 identically to SDCL 10-46-2, which imposes a use tax for "the privilege of the use, storage, and consumption in this state of tangible personal property *purchased for use in this state*[.]" (Emphasis added.) In Ellingson's view, SDCL 10-46-2 expresses an "at rest" use tax policy because it imposes the tax on tangible personal property that is purchased elsewhere but for use in South Dakota.

_____

(. . . continued)
> *Lines of N.Y. v. Mealey*, 334 U.S. 653, 663, 68 S. Ct. 1260, 1266, 92 L. Ed. 1633 (1948) (holding a tax unconstitutional where it sought to tax the gross receipts from transportation occurring out of state), *and Norfolk & W. Ry. Co. v. Mo. State Tax Comm'n*, 390 U.S. 317, 325–26, 88 S. Ct. 995, 1001, 19 L. Ed. 2d 1201 (1968) (holding a property tax on rolling stock located out of state unconstitutional).

[¶28.] We think Ellingson misreads both *Henneford* and SDCL 10-46-2. Initially, *Henneford* does not, itself, state a strict rule under which tangible personal property at rest is subject to a state use tax and property in transit is not. That distinction was simply not at issue in *Henneford* and was not central to the Supreme Court's analysis or decision because the property upon which the State of Washington sought to impose a use tax had been delivered for work on the Grand Coulee Dam in Washington and was unquestionably not in transit.

[¶29.] Still, the at-rest versus in-transit dichotomy is often viewed as significant in the area of state use taxation, but not in the way Ellingson suggests. In Arkansas, for instance, the state legislature has codified the at-rest concept with a statute that declares its use tax "does not apply with respect to the . . . use . . . of tangible personal property" until the property "has finally come to rest within this state" or "has become commingled with the general mass of property of this state." Ark. Code Ann. § 26-53-106(b) (West). The Arkansas Supreme Court has described the meaning of the at-rest text in the following terms:

> [F]or purposes of the "come to rest" test, what is important is not that the property to be taxed actually stopped moving, but that its transportation in interstate commerce had ceased. Under Ark. Code Ann. § 26-53-106(b), property comes to rest in Arkansas when it reaches a point where it can satisfy the purpose—whether for use, storage, distribution or consumption—for which it was put in interstate commerce and sent to Arkansas.

*Alcoa World Alumina, L.L.C. v. Weiss*, 377 S.W.3d 164, 168 (Ark. 2010).

[¶30.] Ellingson views at rest much differently. Its arguments suggest at-rest status is a temporal state of relative permanency, an indeterminate function of the time the property is used within South Dakota and the owner's subjective intent

to keep it in the state. But this idea of property being at rest and subject to taxation is as unworkable as it is legally unsustainable.

[¶31.] Indeed, Ellingson has not identified any authority to support its view of at rest, and what can be gleaned from *Henneford* and jurisdictions where the concept plays a more prominent role is that tangible personal property is at rest when it is used and is no longer in transit through interstate commerce. *See Henneford*, 300 U.S. at 586, 57 S. Ct. at 528 (noting that Washington was seeking to tax "the goods when used in Washington after the transit is completed"); *Alcoa*, 377 S.W.3d at 168 (holding property is at rest when "it reaches a point" where it can be used for the purpose for which it was "put in interstate commerce"). For this reason, the at-rest view that Ellingson seeks to graft to SDCL 10-46-2 and SDCL 10-46-3 is not an accurate reflection of the at-rest/in-transit distinction it espouses.[4]

[¶32.] And, in any event, Ellingson has challenged the constitutionality of SDCL 10-46-3 as it is applied under its existing text. The question we are presented with is not whether there is a better way to interpret SDCL 10-46-3, which, as Ellingson posits it, means a better approach to use tax policy. Instead, we must determine whether the application of SDCL 10-46-3 here violates the Interstate Commerce Clause and the Due Process Clause, and we conclude it does not.

---

4.  Ellingson has not identified an ambiguity in either SDCL 10-46-2 or SDCL 10-46-3, and neither statute includes a textual at-rest requirement. *See Harrah's Operating Co. v. State, Dep't of Tax'n*, 321 P.3d 850, 853 (Nev. 2014) (refusing to "impose a temporal requirement" on a use tax statute that presumed purchase was not for use or consumption in the state if its "first use" occurred outside of the state).

[¶33.] Ellingson alternatively argues that if a use tax can be imposed, then the DOR should apply the 4.5% tax to only 1-10% of the equipment's value in proportion to its usage in South Dakota. But this is simply an extension of Ellingson's unsuccessful at-rest theory, and, as we have indicated, use is use. The provisions of SDCL 10-46-3 do not contemplate a formula by which to measure use, nor do we hold that is what the Constitution requires in these circumstances. *See Jefferson Lines, Inc.*, 514 U.S. at 195, 115 S. Ct. at 1343 (citing *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 170, 103 S. Ct. 2933, 2942, 77 L. Ed. 2d 545 (1983)). The change Ellingson seeks is not a judicial one, but rather one better suited to the formulation of public policy by the Legislature.

## Conclusion

[¶34.] Because SDCL 10-46-3, as applied to Ellingson, satisfies all four prongs of the *Complete Auto* test, it does not violate the Interstate Commerce Clause or the Due Process Clause of the Fourteenth Amendment. We affirm.

[¶35.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.